**Stewart L. UDALL, Secretary of the Interior, et al., Appellants,**

v.

**WASHINGTON, VIRGINIA AND MARYLAND COACH COMPANY, Inc., Appellee,**

**D. C. Transit System, Inc., Intervenor.**

**UNITED STATES of America, Appellant,**

v.

**WASHINGTON, VIRGINIA AND MARYLAND COACH COMPANY, Inc., Appellee,**

**D. C. Transit System, Inc., Washington Metropolitan Area Transit Commission, and Virginia State Corporation Commission, Intervenors.**

**Nos. 21394, 21395.**

United States Court of Appeals District of Columbia Circuit.

Argued May 15, 1968.

Decided June 12, 1968.

Petitions for Rehearing En Banc Denied Aug. 5, 1968.

Mr. A. Donald Mileur, Atty., Department of Justice, with whom Asst. Atty. Gen. Clyde O. Martz, Acting Asst. Atty. Gen. Harold S. Harrison, and Messrs. Roger P. Marquis and Thos. L. McKevitt, Attys., Department of Justice, were on the brief, for appellants. Mr. J. Edward Williams, Atty., Department of Justice, also entered an appearance for appellants.

Mr. Manuel J. Davis, Washington, D. C., for appellee and for intervenor D. C. Transit System, Inc.

Mr. Russell W. Cunningham, Arlington, Va., with whom Mr. Renn C. Fowler, Washington, D. C., was on the brief, for intervenors Washington Metropolitan Area Transit Commission and Virginia State Corporation Commission.

Messrs. Wilmer S. Schantz, Jr. and Samuel M. Langerman, Washington, D. C., were on the brief for intervenor D. C. Transit System, Inc.

Before PRETTYMAN, Senior Circuit Judge, and WRIGHT and TAMM, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

The facts of this appeal can be quickly stated. The United States owns and controls a strip of land which runs along the Potomac River on the Virginia side. Located on this strip is a multi-lane highway, known as the George Washington Memorial Parkway, which stretches from Mount Vernon at its southern end through the city of Alexandria, north through Arlington and Fairfax Counties, past Memorial and Key Bridges, to its northern end at the intersection of the Capital Beltway, Route 495. The Park-

way is administered by the National Park Service of the Department of the Interior, whose Secretary has been charged by Congress to "make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service * *." [1]

Pursuant to this authority the Secretary has issued a series of regulations relating to the operation of commercial vehicles and common carriers on the George Washington Memorial Parkway. The regulations relevant to this appeal provide that passenger carrying vehicles for hire or compensation, other than licensed taxicabs and airport transport vehicles carrying fewer than 14 passengers, are permitted to use the Parkway only with a permit from the Regional Director of the Park Service and only under certain conditions. In essence, permits are granted for unlimited commercial bus service south of Memorial Bridge and, because of the condition of the road surface, no bus service is permitted from Memorial Bridge north to Key Bridge. North of Key Bridge sightseeing buses are allowed pursuant to a permit, as are buses operating nonstop to and from Dulles International and National Airports. But the Secretary's regulations forbid regular commuter bus service over the northern sector of the Parkway except for "direct nonstop passenger service from Key Bridge to a terminus at the Central Intelligence Agency Building at Langley, Virginia,

and direct return, and (c) to provide limited direct nonstop passenger service from the interchange at Route 123 to a terminus at the Central Intelligence Agency Building at Langley, Virginia, and direct return." [2]

In 1961 Washington, Virginia and Maryland Coach Company, the appellee, obtained a permit from the Park Service to run its buses on the northern sector of the Parkway in a manner consistent with the Secretary's regulations. Then, apparently in 1962, it came to the attention of the Park Service that WV&M was not obeying the regulations in that, after making their runs to the CIA Building, its buses were continuing on into northern Virginia, collecting and discharging passengers, and then returning to the Parkway for the return trip south. This procedure violated its permit, which authorized only nonstop trips to the CIA Building and *direct return*.

After negotiation with WV&M, its permit was reissued with this requirement of direct return made even more explicit. Nevertheless, WV&M has consistently denied the validity of the regulations and has continued to violate their terms. Consequently the United States brought suit to restrain WV&M from continuing its unauthorized operation of a suburban commuter bus service on the Parkway between Key Bridge and the CIA Building. D. C. Transit System, Inc., the parent corporation of WV&M, and the Washington Metropolitan Area Transit Commission [3] intervened as defendants.

1. Act of August 25, 1916, § 3, 16 U.S.C. § 3 (1964 ed.).

2. 36 C.F.R. § 50.36(b)(3)(i) (Supp.1968).

3. The WMATC has authorized the WV &M bus service which the Secretary of the Interior has sought to curtail. But WMATC's argument as intervenor is only that the Secretary's regulations are unreasonable. The Commission has not urged that its authority overrides that of the Secretary. The trial court addressed itself to the issue of the relationship between the Commission and the Secretary, holding:

"The Act of September 15, 1960 (74 Stat. 1031, 1037), creating the Washington Metropolitan Area Transit Commission (the WMATC) with authority to issue certificates of public convenience and necessity * * * in the Washington Metropolitan District, did not revoke by implication or supersede the authority of the Secretary of the Interior to promulgate reasonable regulations with respect to administration and use of the George Washington Memorial Parkway." United States v. Washington, Virginia & Maryland Coach

In answer to the suit, WV&M denied the validity of the regulations and counterclaimed for a return of fees paid to the Park Service. In a separate action in which D. C. Transit and WMATC joined as plaintiffs, it sued the Secretary of the Interior to challenge the validity of his regulations.

After the consolidation and trial of these cases the District Court ruled that WV&M was not entitled to refund of the $2,284 in fees which it had paid up to the time of trial to use the Parkway. It also denied the claim of the United States for injunctive and declaratory relief, ruling that the Secretary's regulations were "unreasonable, arbitrary, capricious, discriminatory, and therefore invalid, insofar as they do not permit suburban commuter buses owned by W. V. & M. * * * to operate without limitation on the Parkway above the Key Bridge * * *." 268 F.Supp. at 51. We affirm this decision with respect to the validity of the fees exacted, but reverse the denial of injunctive and declaratory relief.

In essence the trial judge felt that the regulations were discriminatory and invalid for two reasons: first, because they unreasonably allow unlimited bus service south of Memorial Bridge while limiting such service north of the Bridge[4]; and second, because they allow sightseeing, airport and CIA Building buses north of Key Bridge while prohibiting general commuter service on this section of the Parkway.

The Secretary explained his reasons for the regulations in an affidavit in support of the United States' motion for summary judgment. He felt that the use of the Parkway by "ever increasing numbers of commuter busses with their great bulk, trucklike characteristics, and odors, as is contemplated by the Washington, Virginia & Maryland Coach Company, would, in my opinion, physically damage the scenic value of the Parkway."

The trial judge, however, concluded that the Secretary's regulations were not reasonably related to his goal of preserving the scenic value of the Parkway. For he felt that the southern sector of the Parkway was more scenic than the northern sector[5] and consequently to allow unlimited traffic on the southern sector, while prohibiting it to the north, was unreasonable. He felt also that, because the CIA Building, airport and sightseeing buses were physically identical with the WV&M buses, to bar the latter on the northern sector of the Parkway, while permitting the former, was unreasonably discriminatory. He emphasized that he could not "understand how 52 daily suburban commuter buses operated by W. V. & M. could be aesthetically objectionable when approximately 200 airport and C.I.A. commuter buses * * * are not aesthetically objectionable." 268 F.Supp. at 44.

The Secretary, however, did not find that only WV&M buses were unsightly. In his affidavit he "reluctantly" concluded, "after weighing the interest of the public in retaining the present natural beauty of the Parkway and its

Co., D.D.C., 268 F.Supp. 34, 50–51 (1967).
This conclusion of law has not been challenged on appeal and is not now before this court.

4. Below Memorial Bridge the Alexandria, Barcroft and Washington Transit Company operates about 820 regularly scheduled one-way trips per day. That so much bus service is permitted below Memorial Bridge while comparatively little is permitted above Key Bridge constituted to the trial judge "[t]he most

glaring example * * * of the discriminatory effect of the regulations * * *." 268 F.Supp. at 40.

5. The basis for this conclusion was the fact that, while thousands of sightseeing bus trips are made each year on the southern portion of the Parkway, only a handful venture to the north. But the riders of sightseeing buses may well be more interested in historic sites than in scenic beauty. This could well explain the sightseers' preference for the southern sector of the Parkway.

environs [6] as against the compelling necessity to provide CIA employees swift and immediate access to their Agency," that direct commercial transportation to the CIA Building should be permitted on the Parkway. Similar considerations prompted his decision with regard to the use of the Parkway for access to Dulles International Airport.

A rationale for the Secretary's distinction between the southern and northern sectors of the Parkway was offered by Robert C. Horne, Associate Regional Director of the Capital Region of the National Park Service. He explained that the portion of the Parkway between Alexandria and Mount Vernon was authorized in 1928 and constructed in 1932. It replaced a previously existing commuter railway, and there have never been any limitations on commuter bus service.[7] It provides the two entrances to National Airport and connects with several cross streets and bisects several communities south of Alexandria. By contrast, the Parkway north of Key Bridge is a limited access road with no intersecting cross streets. It is known for its scenic beauty and was constructed in part to accommodate CIA personnel. It replaced no existing commuter highways or railroads, and general commuter bus service has never been allowed on any portion of it.[8]

As the distinguished trial judge recognized, there is a judicial presumption of validity of administrative action, and the burden is on WV&M to overcome that presumption. Duesing v. Udall, 121 U.S.App.D.C. 370, 374, 350 F.2d 748, 752 (1965), *cert. denied*, 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1966). The court should not seek to make a *de novo* determination, and it need not agree with the Secretary's judgment in order to uphold it. For where there is more than one solution to an administrative problem the court will uphold any one that has a rational basis. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Here the task of weighing the competing uses of federal property has been delegated by Congress to the Secretary of the Interior. The balance which he strikes will not be judicially upset unless it is arbitrary or beyond his authority. United States v. Shimer, 367 U.S. 374, 381–382, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), quoting Bates & Guild Co. v. Payne, 194 U.S. 106, 108–109, 24 S.Ct. 595, 48 L.Ed. 894 (1904). "Error or unwisdom is not equivalent to abuse." A. T. & T. Co. v. United States, 299 U.S. 232, 236, 57 S.Ct. 170, 172, 81 L.Ed. 142 (1936). Where administrative control has been congressionally authorized, the judicial function is exhausted once there is found some "rational basis" for the action taken. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). *See also* Thor-Westcliffe Development, Inc. v. Udall, 114 U.S.App. D.C. 252, 314 F.2d 257, *cert. denied*, 373 U.S. 951, 83 S.Ct. 1681, 10 L.Ed.2d 706 (1963).

6. The Secretary pointed out in his affidavit that Congress had expressed its concern "that the scenery and natural objects found on the George Washington Memorial Parkway * * * be conserved * * *," citing act of May 29, 1930 (46 Stat. 482), and act of August 25, 1916 (39 Stat. 535), as amended (16 U.S.C. § 1 *et seq.*).

7. The section of the Parkway from Memorial Bridge south to Alexandria was originally closed to commuter buses, but was opened to such buses in 1942 as a wartime conservation measure to provide service to National Airport, then under construction.

8. The section from Memorial Bridge north to Key Bridge was opened to traffic in 1937. The section from Key Bridge north to Spout Run was opened in early 1951. It is the section from Spout Run north to the CIA Building that was opened in 1959, in part to provide easy access to CIA personnel. *See* HEARINGS ON THE 1957 SUPPLEMENTAL APPROPRIATION BILL (Act of July 27, 1956, 70 STAT. 678) BEFORE SUBCOMMITTEES OF THE HOUSE COMMITTEE ON APPROPRIATIONS, 84th Cong., 2d Sess., Part 1, pp. 247, 255, 273, 304 (1956).

Such a basis clearly exists in this case. The Secretary reasonably concluded that, for historical and aesthetic reasons, unlimited commuter bus traffic should be permitted south of Memorial Bridge but not north of it. Similarly he reasonably concluded that, while all buses north of Memorial Bridge did detract from the Parkway's scenic beauty, considerations of public interest compelled the allowance of the limited service the Secretary permits. The fact that WV&M now makes only 52 unauthorized commuter trips per day on the Parkway north of Key Bridge, while the airport, CIA and sightseeing buses make 200, is certainly not decisive. Two hundred and fifty-two buses, authorized or unauthorized, are more unsightly and objectionable than 200. But even more important, the 52 daily trips which WV&M now runs in violation of the law might well become several hundred were its operations sanctioned by the Secretary or, though opposed by the Secretary, "authorized" by the courts.

Since the Secretary's discrimination in the use of the Parkway has a reasonable basis in the record, WV&M must seek a political, rather than a judicial, solution to its problem.

Reversed.

TAMM, Circuit Judge (dissenting):

I would affirm the action of the District Court. I agree with the knowledgeable trial judge that the Secretary's regulations are "unreasonable, arbitrary, capricious, discriminatory, and therefore invalid, insofar as they do not permit suburban commuter buses owned by W. V. & M. * * * to operate without limitation on the Parkway above the Key Bridge. * * * " It is inconceivable to me that the Secretary is able to justify as reasonable and authorized in law, his action in permitting two other bus operators to route identically constructed buses over the Parkway while refusing to permit a third operator, *id est*, Washington, Virginia, and Maryland Coach Company also to operate thereupon. To me the Secretary's justification constitutes an army of words escorting a modicum of reason. His action is nothing more than arbitrary bureaucracy masquerading as reasoned judgment. I do not believe that case law permits an administrative officer, even of cabinet rank, to bestow or withhold valuable franchises with the arrogance of an emperor distributing fiefdoms.