**UNITED STATES of America,
Appellee,**

v.

**Marshall E. GOURLEY et al.,
Appellants.**

**Nos. 73–1306 to 73–1310.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 12, 1973.

Decided Oct. 29, 1973.

On Rehearing of No. 73–1308
Sept. 27, 1974.

Rudolph Schware, Denver, Colo., for appellants.

J. Terry Wiggins, Asst. U. S. Atty. (James L. Treece, U. S. Atty., and Stephen M. Duncan, Sp. Asst. U. S. Atty., on the brief), for appellee.

Before SETH and McWILLIAMS, Circuit Judges, and BROWN, District Judge.

SETH, Circuit Judge.

The appellants were found guilty in a trial to the court of violations of 18 U. S.C. § 1382. This section makes it a criminal offense to reenter a military reservation after having been removed therefrom or after having been ordered not to reenter by the person in command thereof. The defendants have taken this appeal in which they challenge the effectiveness of the orders not to reenter to serve as the basis for the offense for which they were charged.

The orders not to reenter were in the form of letters signed by the Superintendent of the Air Force Academy, and are referred to in the record as "bar letters." These were handed to the defendants and there is no question but what they were received and understood by the defendants. The incidents for which they were given, as well as the time and place thereof, will be described later. There is also no question that defendants reentered the Academy grounds at a later date contrary to the letters.

The trial judge conducted a thorough trial and patiently permitted the parties, several of whom represented themselves, to develop their theories fully. The basic issue is one that has been the subject of few opinions, and the standards and tests are largely undeveloped.

■ The preliminary issue on appeal is whether the defendants in the trial for violation of 18 U.S.C. § 1382 could challenge the validity of the bar letters on constitutional grounds, or whether such a challenge should have been made by some other action commenced by the defendants.

The Supreme Court in Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653, in its summary disposition permitted such a challenge at the trial on the criminal charge. The cited case concerned the distribution of pamphlets in Fort Sam Houston. The issue is not fully developed as the case was decided on an application for certiorari; the Court however said: "The First Amendment protects petitioner from the application of § 1382 under conditions like those of this case." The petition for writ of certiorari was there granted, and the conviction reversed. This must be taken as authority to so challenge the bar letter at the criminal trial. See also Kiiskila v. Nichols, 433 F.2d 745 (7th Cir.).

Does the First Amendment also protect the defendants here? To decide this question, it must be determined whether or not the Air Academy was a "closed post" generally, or whether the places where the initial incidents for which the bar letters were issued took place on a portion of the post which was "open."

■■ It is well recognized that the commander of a military installation has and must have the broad authority and discretion to summarily exclude persons therefrom. Such authority is derived from the powers granted Congress and the Executive by Articles I and II, respectively, of the Constitution, and is a

natural concomitant of the commander's duty to maintain the order, security, and discipline necessary to military operations. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230; Weissman v. United States, 387 F.2d 271 (10th Cir.). However, when the commander permits portions of the installation to be open to the general public, and visitors are encouraged, he may not restrict an individual's exercise of his First Amendment rights in such public areas. Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653; Burnett v. Tolson, 474 F.2d 877 (4th Cir.); Spock v. David, 469 F.2d 1047 (3d Cir.). As noted by the Supreme Court in Flower:

> "Under such circumstances [post open to public] the military has abandoned any claim that it has special interests in who walks, talks, or distributes leaflets on the avenue. The base commandant can no more order petitioner off of this public street because he was distributing leaflets than could the city police order any leafleteer off any public street."

The authorities cited immediately above demonstrate also that the decision whether an area is open or closed must be made in view of the realities of the circumstances, and not on a theoretical basis nor without finding some actual, practical effect of a formalized or ritualized "closing." The Supreme Court in Flower v. United States had little difficulty in reaching a conclusion in view of the fact that the street in Fort Sam Houston, where the incident occurred as a basis for the bar letter, was like any other street in the city, and traversed by public carriers and the public generally, without any gates or sentries.

Much evidence was presented at trial in the case before us to show whether the Air Academy grounds near Colorado Springs were closed or open. The Academy is on a large tract of land several miles from the City of Colorado Springs. Appellee stresses these facts to demonstrate that the grounds are closed: (1) that the Academy was formally declared a closed base by order of the Superintendent in accordance with Air Force Regulations; (2) that access to the base is by only two security posts (gates or sentry posts) manned twenty-four hours a day; (3) that warning signs to the effect that entry is only by permission of the Superintendent are displayed at each gate, (4) that entering traffic is restricted after 6:00 p. m. each day; (5) that there are large "stop" signs at each gate; (6) that the Superintendent has authority to cancel any public activity on base; and (7) that no regular bus, truck, or common carrier routes traverse the main Academy grounds.

Appellants, to show the open nature of the Academy, showed that: (1) automobiles entering the Academy are stopped at times at the gates, but no substantial check is made of daytime visitors, and no stopping is attempted when large public events as football games are taking place at the Academy; (2) that there are over one million visitors to the Academy each year; (3) that in 1971 over 800,000 people visited the Cadet Chapel which is well within the grounds; (4) that attendance at Academy football games averaged nearly 50,000 spectators per game, the Stadium being on the grounds with access through the gates; and (5) that tour buses make tours of the grounds and are not stopped or questioned.

The bar letters were issued to some of the defendants for passing out anti-war pamphlets to persons who were entering the Academy football stadium for a game; they were issued to others for kneeling in a "silent protest" of the Vietnam War on the grass outside the Academy Chapel during regular visiting hours. One defendant performed another symbolic anti-war act at a location on the Academy Reservation which is not disclosed in the record, and his act is considered the same as the others.

We are thus concerned with the area surrounding the football stadium just

before or during a game, and with the walks and grassed areas immediately surrounding the Academy Chapel during ordinary visiting hours. As to these places, at these times, the record is clear that the Academy encourages visitors to be present, and imposes no restrictions on their entrance at the "gates" of the Academy through which they must pass to reach these places. The Chapel is very impressive and of unique design according to the record, and for those reasons, and by reason of its use, it is a great attraction for visitors. It is so treated by the pamphlets and pictures in the record issued with the authority of the Academy officials. The very large number of visitors to the Chapel demonstrates its attraction as well as its public nature.

The football games and the stadium also have an attraction for visitors. These spectators are actively encouraged to attend the games, and do so in large numbers with no restrictions whatever at the gates. Cars entering the grounds are not stopped on game days at pregame and post-game times. A witness testified that visitors at times other than football games are stopped at the two gates. At one gate, they are encouraged to go into the Visitors Center, at the other gate, they are given maps of the grounds. Neither of these actions at the gates can be considered to be much other than a sort of welcome to the usual visitors. Access of the general visitor is not permitted into certain areas of the Academy, not herein considered, however, the descriptive material which accompanies the photographs of Academy scenes and buildings states that most of the area is open to the public. This material is prepared under authorization of the Academy officials, as mentioned.

The practical way in which the matter of public entry to the stadium and at the Chapel area is treated, and the realities thereof, completely overcome as to the times herein considered the result which may have been intended by the ritualistic closing of the Academy grounds gen-

erally. Also, the limited use to which the "gates" are put also takes away their effectiveness as closure as to visitors at the times and places here considered.

We find the factual situation quite different at the Air Academy than prevailed at Tinker Field, as concerned in United States v. Floyd, 477 F.2d 217 (10th Cir.), and in Weissman v. United States, 387 F.2d 271 (10th Cir.), McQueary v. Laird, 449 F.2d 608 (10th Cir.), and Schneider v. Laird, 453 F.2d 345 (10th Cir.). The facts are instead more like those in Burnett v. Tolson, 474 F.2d 877 (4th Cir.). We are also here concerned with persons who are encouraged to come on the grounds as visitors and not with employees of the base. We must hold that any finding that the grounds generally were closed was not supported by substantial evidence and must give way to the evidence relating to the particular areas herein concerned.

■ In view of the fact that the areas where the incidents occurred which were the basis of the bar letters were public areas, and since the defendants were there exercising First Amendment rights, the letters cannot serve as a basis for the charges. We have expressed no opinion concerning the incident which took place on defendants' reentry.

The judgments are each reversed and the cases are remanded with directions to dismiss the charges as to each appellant.

## ON REHEARING OF NO. 73–1308

The Government has asked for rehearing only in case No. 73–1308— United States v. Samuel A. Johnson, one of the consolidated cases covered by the opinion heretofore filed by this court, Nos. 73–1306 through 73–1310. The rehearing is granted.

■ The petition has merit as a bar letter relative to this particular defendant was given to him personally after an incident in which he trespassed on Academy property with a tractor.

He thereafter returned to Academy grounds. The area here concerned was not a public area as considered in the consolidated cases, and the bar letter was thus valid. 18 U.S.C. § 1382.

Under these circumstances, the letter would be sufficient to support a conviction under Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653, as distinct from the circumstances prevailing in the other consolidated cases.

The judgment of conviction as to defendant, Samuel A. Johnson, in No. 73–1308 is affirmed, and the opinion heretofore issued in the consolidated cases is so modified, but otherwise it remains unchanged.