Don SABIN et al.,
Plaintiffs-Appellants,

v.

Earl H. BUTZ, Secretary of Agriculture, and Edward P. Cliff, Chief, U. S. Forest Service, Defendants-Appellees.

No. 74–1060.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 13, 1974.

Decided April 9, 1975.

Rehearing Denied July 11, 1975.

Carl R. Nutzhorn, Aspen, Colo., for plaintiffs-appellants.

John J. Zimmerman, Atty., Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., George R. Hyde, Atty., Dept. of Justice, Washington, D. C., and James L. Treece, U. S. Atty., Denver, Colo., on the brief), for defendants-appellees.

Before HOLLOWAY and McWILLIAMS, Circuit Judges, and CHRISTENSEN,* District Judge.

HOLLOWAY, Circuit Judge.

This suit challenges the denial by the Forest Service of a special use permit to allow an independent ski instructor to teach downhill skiing in the Aspen, Colorado, area of the White River National Forest. Plaintiff Lemos, an admittedly qualified ski instructor, sought the permit and plaintiffs Sabin, Young, and Paul were prospective students desiring his instruction. The permit was denied pursuant to a Forest Service policy against authorizing individuals to operate concessions or ski schools on a ski area under permit to another party, without his consent.[1] In effect, permittees operating winter sports areas are thus granted an exclusive right to control instruction in the area covered by their permit.[2] It is this policy and its application to Lemos which plaintiffs challenge.

The facts are essentially without dispute. Lemos is admittedly a certified ski instructor (Brief for Appellees at 4). The Forest Service has raised no question as to his qualifications. In April, 1971, he sought a special use permit under 16 U.S.C.A. § 497 to teach downhill,

---

* Honorable A. Sherman Christensen, of the District of Utah, sitting by designation.

1. Section 2721.61e of the Forest Service Manual provides:

 Ski schools will be covered in the basic permit [to the area operator]. They will not normally be authorized to a third party through an additional permit. The winter resort operator may make such arrangement by sublease as the Forest Supervisor is will-

ing to approve, but the total responsibility rests with the basic permittee.

2. As appellants point out, the permits to the area permittees do not themselves grant an exclusive right to teach skiing. The exclusive control over ski instruction by the area permittees flows from the Forest Service policy, stated above, and its application which apparently is uniform.

or Alpine, skiing for hire on forest lands in the White River National Forest. These particular lands were already under permit for operation as winter sports areas, i. e., Aspen Mountain, Aspen Highlands, Buttermilk and Snowmass.[3] The special use permits held by the area operators gave them the right to conduct ski instruction on lands covered by their permits. The District Ranger denied a permit to Lemos. As stated, he did so on the basis ". . . that the Forest Service will not authorize individuals to operate concessions or ski schools on a ski area under permit to another party without that party's consent." See n. 1, supra.

Lemos filed a request for reconsideration of his application, being joined by plaintiffs Sabin, Young and Paul, the three prospective students. Lemos and the students submitted separate written statements[4] in support of the request for reconsideration. Lemos proposed alteration of the Forest Service policy on conditions suggested to meet objections by the Forest Service. The request for reconsideration was denied. Similar requests for reconsideration of the policy and of the denial of Lemos' application were subsequently urged through higher administrative levels and ultimately denied by the Secretary of Agriculture in March, 1972.

In April, 1972, this suit was filed seeking reversal of the denial of the permit, a declaratory judgment that the policy in question was unlawful, and an injunction against its continued enforcement.[5] Jurisdiction was claimed under the Administrative Procedure Act, 5 U.S.C.A. § 706(2), and 28 U.S.C.A. § 2201.

The complaint alleged four claims: (1) that the Forest Service policy was arbi-trary, capricious, and contrary to law, and its enforcement was an abuse of discretion (2) that the denial of a permit to Lemos was arbitrary, capricious and contrary to law and an abuse of discretion in that it was a result of the unlawful Forest Service policy; (3) that the policy denied First Amendment freedom of expression rights to both Lemos and his would-be pupils; and (4) that the policy violates Section 1 of the Sherman Act, 15 U.S.C.A. § 1.

After answer and filing of answers to interrogatories and admissions, all parties moved for summary judgment. An extensive Order by the District Court analyzed the record and authorities and granted summary judgment for the defendants, relying primarily on Heath v. Aspen Skiing Corp., 325 F.Supp. 223 (D.Colo.). In essence the court held that the Forest Service Manual provisions and the policy of the Forest Service governing ski schools are reasonable, authorized, lawful and in the public interest, and rejected the various contentions of plaintiffs.

This appeal presents essentially the same claims as were made in the District Court. We will first treat a jurisdictional question raised by the Government, and will then turn to appellants' propositions.

### 1. Jurisdiction to review the administrative action

The Government argues that the agency action challenged is not subject to review (Brief for Appellees at 15 n. 2). It says that the discretion vested in the Secretary by 16 U.S.C.A. §§ 497 and 551 is so broad as to place the agency action within the class of unreviewable action committed to agency discretion by law under 5 U.S.C.A. § 701(a)(2), relying on

---

**3.** A substantial part, but not all, of the ski trails of these four areas are located on public land. See Heath v. Aspen Skiing Corp., 325 F.Supp. 223, 225 (D.Colo.).

**4.** The students' statement said it was made for themselves and for some 90 named individuals, similarly situated, all of whom had been, and would prefer in the future to be, pupils of independent ski instructors and were therefore adversely affected by the denial of Lemos' application.

**5.** The action was commenced in the District of Columbia, but was later transferred to the District of Colorado pursuant to 28 U.S.C.A. § 1404.

Hi-Ridge Lumber Co. v. United States, 443 F.2d 452 (9th Cir.), and Mollohan v. Gray, 413 F.2d 349 (9th Cir.).

■ We cannot agree. There is a basic presumption of judicial review for one suffering legal wrong because of, or adversely affected or aggrieved by, agency action. Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681. The cited exception for discretionary action is a very narrow one, applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136; see National Helium Corp. v. Morton, 455 F.2d 650, 655 n. 12 (10th Cir.); Parker v. United States, 448 F.2d 793, 795 (10th Cir.), cert. denied sub nom. Kaibab Industries v. Parker, 405 U.S. 989, 92 S.Ct. 1255, 31 L.Ed.2d 455.

■ Here 16 U.S.C.A. § 497, which grants the Secretary broad authority to issue permits for the use of land in the National Forests, also expressly provides that such authority ". . . shall be exercised in such manner as not to preclude the general public from full enjoyment of the natural, scenic, recreational, and other aspects of the national forests." In view of this provision and the nature of the authority granted we do not feel that the issuance of such permits is within the class of unreviewable actions committed to agency discretion. There is law to apply and there are substantial issues raised as to whether the agency action was arbitrary or unlawful. See Parker v. United States, 448 F.2d 793 (10th Cir.), cert. denied sub nom. Kaibab Industries, Inc. v. Parker, 405 U.S. 989, 92 S.Ct. 1255, 31 L.Ed.2d 455; East Oakland-Fruitvale Planning Council v. Rumsfeld, 471 F.2d 524, 531–35 (9th Cir.); but see Ness Investment Corp. v. United States Department of Agriculture, Forest Service, 360 F.Supp. 127 (D.Ariz.). Thus plaintiffs present a case within the grant of subject matter jurisdiction conferred by the Administrative Procedure Act. Bard v. Seamans, 507 F.2d 765 (10th Cir.).

### 2. *The First Amendment claim*

■ Appellants contend that the administrative action infringed their First Amendment rights. They rely primarily on United States v. Gourley, 502 F.2d 785 (10th Cir.), and Overseas Media Corp. v. McNamara, 128 U.S.App.D.C. 48, 385 F.2d 308 as support for the proposition.

Lemos' application was not specific as to the communications or expressions proposed, and we can assume only that communications necessary for ordinary skiing instructions would be involved. Nothing more is claimed by the briefs or in the record to be infringed by the administrative actions.

In this setting we are not persuaded by the constitutional claim. Such communication would not convey information, express opinion, recite grievances, protest claimed abuses or seek financial support for a movement of public interest and concern within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686. Instead, in essence the communications would do no more than carry out a commercial transaction. See Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 384–85, 93 S.Ct. 2553, 37 L.Ed.2d 669; Valentine v. Chrestensen, 316 U.S. 52, 54, 62 S.Ct. 920, 86 L.Ed. 1262; Howard v. State Department of Highways of Colorado, 478 F.2d 581, 585 (10th Cir.); Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 29–30 (5th Cir.), cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882; Banzhaf v. F. C. C., 132 U.S.App.D.C. 14; 405 F.2d 1082, 1101–02, cert. denied, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93; cf. Kansas Electric Supply Co. v. Dun and Bradstreet, Inc., 448 F.2d 647, 649 (10th Cir.), cert. denied, 405 U.S. 1026, 92 S.Ct. 1289, 31 L.Ed.2d 486.

Moreover no recognized "First Amendment forum" is involved. See Lehman v. City of Shaker Heights, 418 U.S. 298, 301, 94 S.Ct. 2714, 41 L.Ed.2d 770 (plu-

rality opinion) Nor is the challenged governmental policy arbitrary in its impact on the exercise of First Amendment rights. Id.; see also United States v. Cassiagnol, 420 F.2d 868, 874–76 (4th Cir.), cert. denied, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654.

We believe that United States v. Gourley, 502 F.2d 785 (10th Cir.) does not support appellants' First Amendment claim. It involved activities clearly within the protection of the Amendment—passing out anti-war pamphlets and the like—in contrast to the commercial activities involved here. And we likewise feel that reliance on Overseas Media Corp. v. McNamara, 128 U.S.App. D.C. 48, 385 F.2d 308 is misplaced. Its reversal of summary judgment for the defendant was based on other grounds— the presence of factual questions calling for an evidentiary hearing on claims that unfavorable administrative action was arbitrary and taken without reference to established criteria. While "constitutional overtones" were acknowledged as being present there, id. at 315 n. 12, the case is obviously distinguishable, involving an administrative action impeding the distribution of a newspaper.

For these reasons we feel the First Amendment claim is insubstantial and agree with the rejection of it by the District Court.

3. *The claim that the single permittee policy and the denial of a permit to Lemos were contrary to law*

We next consider appellants' claim that the administrative policy and the permit denial were contrary to law in that they violated 16 U.S.C.A. § 497 and thus exceeded the scope of the Secretary's authority. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136.

Appellants rely on 16 U.S.C.A. § 497 to attack the lawfulness of the single permittee policy and the denial of Lemos' permit. They contend that § 497, which governs the manner of exercise of the Secretary's use permit authority,

gives plaintiffs Sabin, Young and Paul the right to study under qualified instructors of their choice and thus supports issuance of the permit to Lemos. They point to the statute's mandate that:

> The authority provided by this section shall be exercised in such manner as not to preclude the general public from full enjoyment of the natural, scenic, recreational, and other aspects of the national forests.

 We are not persuaded that promulgation of the Manual provisions establishing the single permittee policy was beyond the scope of authority granted the Secretary. Broad authority is conferred by 16 U.S.C.A. §§ 497 and 551 for the Secretary to issue use permits under such regulations as he may make and upon such terms and conditions as he may deem proper. This grant of authority seems clearly valid in view of Congress' power over public lands and the conditions that may be imposed on their use. See United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Ivanhoe Irrigation District v. McCracken, 357 U.S. 275, 294–95, 78 S.Ct. 1174, 2 L.Ed.2d 1313. We are satisfied that the Manual provisions and the single permittee policy are within the scope of power granted to the Secretary. See United States v. Hymans, 463 F.2d 615, 617 (10th Cir.); Sierra Club v. Hickel, 433 F.2d 24, 34–35 (9th Cir.), aff'd., 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636.

Whether the policy or its application in denying Lemos' permit may have been in violation of other substantive or procedural law is, another, and more troublesome, question.

4. *The claim that the policy and the permit denial were arbitrary, capricious, and an abuse of discretion in violation of 5 U.S.C.A. § 706(2)(A)*

 The real difficulty lies with whether the Forest Service single permittee policy applied here, or the permit denial in question, were arbitrary, capri-

cious or an abuse of discretion. See 5 U.S.C.A. § 706(2)(A). Review under this provision of the A.P.A. provokes inquiry whether the administrative decisions were based on a consideration of all the relevant factors and whether there was a clear error of judgment. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. Id. The court's function is exhausted where a rational basis is found for the agency action taken. Udall v. Washington, Virginia and Maryland Coach Co., 130 U.S. App.D.C. 171, 398 F.2d 765, 769, cert. denied, Washington Metropolitan Area Transit Com. v. United States, 393 U.S. 1017, 89 S.Ct. 620, 622, 21 L.Ed.2d 561.

Appellants argue that antitrust policy and precedents forbid the Forest Service from conferring a monopoly of ski instruction on the on-site ski school, citing Hecht v. Pro-Football, Inc., 144 U.S.App. D.C. 56, 444 F.2d 931, cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736. In connection with their arguments about antitrust policy and administrative discretion, appellants rely on Pillai v. CAB, 158 U.S.App.D.C. 239, 485 F.2d 1018, a case stressing the duty of the administrative agency to consider the philosophy of the antitrust laws in weighing administrative alternatives. Id. at 1029. At argument appellants contended that the antitrust statutes must be considered in the administrative decision. For reasons that follow we must agree that the contentions of administrative failure to weigh anticompetitive factors and antitrust policy present

a problem in connection with the summary judgment entered by the District Court.

 We must pause here to recall the procedural status of the case before us. Appeal was taken from a summary judgment granted in favor of defendants.[6] We must decide whether the summary judgment papers—the pleadings, answers to interrogatories, admissions and the like—show that there was no genuine issue of fact and that the defendants were entitled to judgment as a matter of law. Rule 56, F.R.Civ.P. More specifically, we must determine whether the summary judgment papers demonstrate that there was no factual issue and whether, as a matter of law, they establish that the administrative agency took into account all relevant factors so that its actions were not arbitrary by failing to do so, or otherwise irrational. See Overseas Media Corp. v. McNamara, 128 U.S.App.D.C. 48, 385 F.2d 308, 313–14.

 When agency reconsideration of the single permittee policy and denial of Lemos' application were sought, appellants argued that there was a monopoly created by the policy, with undesirable consequences. (R. 86, sub. 10, 13, 15). This position was urged on the Forest Service officials and on the Secretary (see, e. g., R. 106, sub. 11–12, 16). Appellants argued there was a creation of a monopoly, contrary to the anti-monopoly policy pursued by the Forest Service in other respects (see R. 86 at sub. 13). Adverse consequences alleged to result from the monopoly policy included the stifling of various techniques of ski instruction and the lack of price competition that independent instructors could provide (Id. at sub. 5).[7]

6. The notice of appeal also stated that the denial of plaintiffs' motion for summary judgment was appealed. No appeal lies, however, from a denial of summary judgment. Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345, 349 (10th Cir.).

7. As stated above, Lemos' statement in support of his request for reconsideration also

suggested the adoption of numerous conditions, including liability insurance coverage, that would have to be met before a permit could be issued to a single instructor. These conditions were suggested to meet objections to independent instructors posed by the Forest Service. And an affidavit was submitted discussing the success of the French system permitting individual instructors to utilize ski area

In its summary judgment papers, the Government outlined the basis of the single permittee policy and the denial of Lemos' application. The factors apparently considered by the Forest Service appear in a letter replying to an inquiry by Congressman Aspinall on the Lemos application and in several responses to appellants' requests for reconsideration. (R. 64, 106).[8]

In essence the reasons given by the Forest Service for its position were that the area permittees were required to spend money and effort to develop the area [9] and were in exchange given the exclusive right to carry on the associated businesses; that neither the Government nor the permittees could adequately serve the public if the activities were splintered into many permits; that the exclusive permittee takes care of various public facilities which do not generate sales to bear their costs; and that the single permittee system allows the Government to be sure the public is properly served.

We find no reference in any of the administrative record offered by the Government showing consideration of the monopoly and related anti-competitive factors, including the alleged loss of benefits to the public in freedom on teaching techniques of skiing and the benefit of the effect on rates by independent instructors, which had been raised. (R. 86, sub. 5). In fact, in its response to interrogatories in the District Court, the Government referred to the Forest Service letter to Congressman Aspinall, supra n. 8, and stated that

---

facilities, along with other advantages that appellants claimed for the independent instructor system.

8. At argument the Government stated that the reason for denial of the application of Lemos appeared in these documents. See also Brief for Appellees at 12–13. The reply to Congressman Aspinall was as follows (R. 64):

Each ski area permittee is required to spend his money and effort to develop the area; he must also provide for the health, safety, and welfare of all users. We have made him responsible for all activities on the area, and in exchange have given him the exclusive right to carry on himself or under his immediate direction the associated businesses.

This is the contractual relationship now established by the terms of the special use permits for all existing permitted winter sports sites. A part of the permit requires that the permittee operate or control the operation of a ski school. In this way, we can be sure the public is properly served.

Neither we nor the permittee could adequately serve the public if the activities were splintered into many permits. Of particular importance would be the question of who should provide public restrooms, first-aid facilities, ski patrols, parking, access roads, and snow removal. None of these generate sales to cover the cost burden, yet they must be done and under the exclusive permit system the permittee takes care of these things. Lift ticket prices bear a share of these costs, and so do food sales, lodging rents, and ski school charges. No one of these services bears the entire load. Arranging prices so

one service did carry the entire load would have the effect of subsidizing all other services at the expense of those who patronize the one.

An independent ski instructor would be capitalizing on the investment of another without accepting any responsibility in the total operation. Since we want operations to fulfill the needs of the general public, we must maintain the single operator concept.

There are two factual inaccuracies in the above statement which the Government has admitted. First, the ski area permittee is not given a contractual exclusive right to carry on associated businesses in the ski area. He operates under a special use permit which is non-exclusive in terms. The "exclusive" right which the permittee enjoys is a result of the Forest Service policy alone, and not of any contract. (See R. 124–25). Second, the use permits involved do not require that the permittee operate a ski school or provide ski instruction. (See R. 87 sub. 15). While the Manual, § 2721.61e, states that winter resorts "should provide a [ski] school," and while some permits may contain such a requirement, none of the permits for the Aspen ski areas where Lemos sought a permit to teach appear to do so. They merely grant a non-mandatory authorization, at the permittee's option, to conduct a ski school. (See R. 117). Still, all of the Aspen area permittees have taken advantage of such authorization and do, in fact, conduct ski schools under their permits. (See R. 127).

9. Forest Service Manual § 2342.03–3.

"[t]he reason for the adoption of the general policy of usually only having single Special-Use Permits, and of applying this general policy to ski instruction, is not premised so much on economic data, and the like as it is on common sense." (R. 56–57).

 We are persuaded that a summary judgment was not proper on this record. The administrative decision was required to be based on a consideration of all relevant factors, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136, and relevant anti-competitive and antitrust policy matters were raised. Where the governing statute charges the agency with considering the public interest in its decisions, in appropriate cases it must weigh traditional antitrust concepts and related anti-competitive factors. See Gulf States Utilities Co. v. FPC, 411 U.S. 747, 758–60, 93 S.Ct. 1870, 36 L.Ed.2d 635; Denver & Rio Grande Western R. R. Co. v. United States, 387 U.S. 485, 492–98, 87 S.Ct. 1754, 18 L.Ed.2d 905; Foreign Study League v. CAB, 475 F.2d 865, 869, 871 (10th Cir.).[10]

There is a public interest provision in the directive in 16 U.S.C.A. § 497 that the use permit authority "shall be exercised in such manner as not to preclude the general public from full enjoyment of natural, scenic, recreational, and other aspects of the national forests." The benefit of the statute extends to the individual applicant. And we are satisfied that the circumstances surrounding his application, and the factors presented in his communications with the agency, called for consideration of the monopoly and anti-competitive factors he raised. Denver & Rio Grande Western R. R. Co. v. United States, 387 U.S. 485, 492, 87 S.Ct. 1754, 18 L.Ed.2d 905.[11] Of course, we do not consider or suggest that a particular administrative judgment is indicated by the anti-competitive factors.

The Government's only argument addressed to antitrust considerations is that valid governmental action may not constitute an antitrust violation, citing California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642; Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315; Howard v. State Department of Highways of Colorado, 478 F.2d 581 (10th Cir.). The antitrust claim as presented in Heath v. Aspen Skiing Corp., 325 F.Supp. 223 (D.Colo.), was rejected on this basis. However, we cannot agree that this proposition is an answer to the problem as presented in this case, or that it supports the summary judgment entered. We are not considering whether particular violations of the antitrust laws were involved—a question the agency would not decide definitively. See McLean Trucking Co. v. United States, 321 U.S. 67, 79–80, 64 S.Ct. 370, 88 L.Ed. 544. We are concerned instead with whether there was arbitrary agency action by failure to take into account broader considerations of anti-competitive factors. Gulf States Co. v. FPC, 411 U.S. 747, 759–60, 93 S.Ct. 1870, 36 L.Ed.2d 635.

10. See also F. M. C. v. Aktiebolaget Svenska Amerika Linien, 390 U.S. 238, 243–46, 88 S.Ct. 1005, 19 L.Ed.2d 1071; California v. FPC, 369 U.S. 482, 484–85, 82 S.Ct. 901, 8 L.Ed.2d 54; McLean Trucking Co. v. United States, 321 U.S. 67, 79–80, 64 S.Ct. 370, 88 L.Ed. 544; National Broadcasting Co. v. United States, 319 U.S. 190, 222–24, 63 S.Ct. 997, 87 L.Ed. 344; City of Huntingburg, Indiana v. F. P. C., 162 U.S.App.D.C. 236, 498 F.2d 778, 783; Lat-. in America Pacific Coast S. S. Conf. v. FMC, 150 U.S.App.D.C. 362, 465 F.2d 542, 547–548, cert. denied, 409 U.S. 967, 93 S.Ct. 269, 34 L.Ed.2d 234; Cities of Statesville et al. v. A. E.

C., 142 U.S.App.D.C. 272, 441 F.2d 962, 986–87 (Leventhal, J., concurring); Northern Natural Gas Co. v. FPC, 130 U.S.App.D.C. 220, 399 F.2d 953, 958–61; Pillai v. CAB, 158 U.S.App. D.C. 239, 485 F.2d 1018, 1029.

11. See Gamco, Inc. v. Providence Fruit & Produce Bldg., 194 F.2d 484, 487 (1st Cir.), cert. denied, 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 636; United States v. Terminal Railroad Ass'n of St. Louis, 224 U.S. 383, 405–411, 32 S.Ct. 507, 56 L.Ed. 810; United States v. Otter Tail Power Co., 331 F.Supp. 54, 61 (D.Minn.), modified 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359.

We are satisfied that the record made with the summary judgment motion did not demonstrate consideration of the monopoly and anti-competitive factors by the agency. See Overseas Media Corp. v. McNamara, 128 U.S.App.D.C. 48, 385 F.2d 308, 313–14, 318. Therefore we hold that the summary judgment must be vacated and the case remanded on the issue whether the administrative actions were arbitrary, capricious or an abuse of discretion. If further proceedings demonstrate fair consideration of all relevant factors by the agency, the only function of the court would be to decide if the agency action had a rational basis. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416–21, 91 S.Ct. 814, 28 L.Ed.2d 136. If the Court concludes that the defendants failed to consider all relevant factors, the case should be remanded to the Secretary for reconsideration. See Denver & Rio Grande Western R. R. Co. v. United States, 387 U.S. 485, 507, 87 S.Ct. 1754, 18 L.Ed.2d 905; Michigan Consolidated Gas Co. v. FPC, 108 U.S.App.D.C. 409, 283 F.2d 204, 226, cert. denied sub nom. Panhandle Eastern Pipe Line Co. v. Michigan Consolidated Gas Co., 364 U.S. 913, 81 S.Ct. 276, 5 L.Ed.2d 227.

In sum, we affirm the summary judgment for the defendants as to the rejection of the First Amendment claim and as to the claim that the single permittee policy was beyond the scope of authority of the Secretary. The summary judgment is vacated as to the remaining claims, and the case is remanded for further proceedings as provided herein.[12]

McWILLIAMS, Circuit Judge (concurring in part and dissenting in part):

I concur in points 1, 2 and 3 in the majority opinion. However, I dissent as to point 4 and would affirm the judgment of the trial court.

In my view, the record shows that the denial of the request for a special use

permit was not arbitrary, capricious, or an abuse of discretion. It is abundantly clear to me that the Forest Service was of the view, which I believe to be a rational one, that, all things considered, a single permittee policy, as opposed to a multiple permittee policy, was more advantageous for all concerned, except possibly these plaintiffs, and others similarly situated, who in reality simply seek to benefit from the work of others. I believe it to be at least implicit in the Forest Service's action that consideration was given the possible monopolistic and anticompetitive aspects of a single permittee policy and that the Forest Service nevertheless concluded that, from the standpoint of the general public, the single permittee policy was preferable to a multiple permittee policy.

---

12. We do not reach or decide appellants' claim, relying on Hecht v. Pro-Football, Inc., 144 U.S.App.D.C. 56, 444 F.2d 931, cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d

736, that the agency policy violated the Sherman Act itself. In view of the disposition we make based on other considerations, we intimate no view on that question.