947 F.2d 955
 22 Envtl. L. Rep. 20,337, 22 Envtl. L. Rep. 20,538
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 VILLAGE OF LOS RANCHOS DE ALBUQUERQUE; Anne Bullock;
Steven Ruffennach; Edward Banks; Bill Derr; R.E. Clark;
Ann Clark; Conrad Stack; Arnold Sargeant; Kit Sargeant;
Rio Grande Valley Preservation Society, Plaintiffs-Appellants,
v.
John O. MARSH, Secretary of the Department of the Army;
Kent R. Genser, Colonel, District Engineer for the
Albuquerque District of the Army Corps of Engineers; Frank
Dunkle, Director of the United States Fish and Wildlife
Service; Manuel Lujan, Jr., Secretary of the Department of
the Interior; Henry J. Hatch, Lieutenant General; Michael
Spear, Region 2 (Southwest Region) of the Fish and Wildlife
Service; City of Albuquerque, Defendants-Appellees.
 Nos. 90-2012, 90-2026 and 90-2052.
 United States Court of Appeals, Tenth Circuit.
 Oct. 24, 1991.
 
 Before HOLLOWAY, ALDISERT* and EBEL, Circuit Judges.
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 BACKGROUND
 
 1
 This is an appeal from the district court's order granting summary judgment to appellees. A more complete recitation of the facts surrounding this controversy appear in Village of Los Ranchos de Albuquerque v. Barnhart, 906 F.2d 1477, 1478-79 (10th Cir.1990), cert. denied, 111 S.Ct. 1017 (1991). Therefore, for the sake of brevity, we summarize the facts surrounding this particular appeal.
 
 
 2
 In the lower court, appellants sought declaratory and injunctive relief in order to challenge the United States Army Corps of Engineers ("the Corps") decision to issue a permit that would allow the proposed Montano Bridge to be built over the Rio Grande River. Appellants asserted in the lower court that the granting of the permit pursuant to 33 U.S.C. § 1344 (§ 404 of the Clean Water Act) for a fill of the waters of the United States in conjunction with the Montano Bridge violated various federal laws and regulations, including the National Environmental Policy Act ("NEPA").
 
 
 3
 Specifically, the district court summarized the appellants' contentions as follows:
 
 
 4
 1. That the defendants violated NEPA by failing to prepare an Environmental Impact Statement and by finding that the Montano project would not have significant environmental impact, and by failing to fully address the impacts of the corridor associated with the project;
 
 
 5
 2. That the district engineer of the Corps violated EPA guidelines by granting a § 404 permit to the City despite the existence of alternatives to the bridge which would have a less adverse impact on the Rio Grande Bosque area;
 
 
 6
 3. That the Corps violated § 404 of the Clean Water Act by failing to designate the Bosque habitat in and adjacent to the Montano corridor as wetlands. In addition, the Corps failed to meet its obligation under the Clean Water Act to make a reasoned wetlands determination based on the fact that it did not gather sufficient information;
 
 
 7
 4. That in failing to find that practical alternatives with less adverse impact on the Bosque existed, and in finding that the granting of the § 404 permit was contrary to the public interest, the district engineer's decision was arbitrary, capricious and an abuse of discretion which is unlawful and should be set aside pursuant to the Administrative Procedure Act;
 
 
 8
 5. That the Fish and Wildlife Service failed to fulfill its responsibility by failing to recommend the no project alternative when mitigation could not be accomplished, or to recommend that the bridge be placed in a less-environmentally damaging site.
 
 
 9
 Dist.Ct.Opin. at 2.
 
 
 10
 Appellees asserted that the plaintiffs had not "made a prima facie showing sufficient to warrant continued litigation on this matter, since they ha[d] not presented evidence that the administrative agency acted in an arbitrary, capricious or otherwise unlawful manner." Id. at 3. The district court, citing Sabin v. Butz, 515 F.2d 1061, 1067 (10th Cir.1975), ruled in favor of the defendants, and granted their request for summary judgment. Dist.Ct.Opin. at 5. The court found that the issue before it was not "whether the plaintiffs can point to one or other conflicting fact or opinion in the record.... Instead, the issue before the Court is whether the record before the administrative agency substantiate[d] that agency's finding." Id. at 3-4.
 
 ANALYSIS
 I. No Error In Granting Of Summary Judgment
 
 11
 The first issue that appellants raise is whether
 
 
 12
 [t]he granting of federal defendants' motion for summary judgment was erroneous because genuine issues as to material facts exist regarding whether the Finding of No Significant Impact by the Corps [of Engineers] was justified by the Environmental Assessment as required by § 404 of the Clean Water Act, 33 U.S.C. § 1344, and NEPA, 42 U.S.C. § 4332, et seq., and applicable regulations.
 
 
 13
 Appellants' Br. at 9.
 
 
 14
 The mere existence of genuine issues of material fact in the record before the Corps would not, in this case, preclude a granting of summary judgment in the district court in favor of the defendants. The district court, as a reviewing court, need only decide if there is a material dispute about whether the agency at issue acted in an "arbitrary or capricious" manner. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 385 (1989). We agree with the appellees that "[t]his standard of review is highly deferential." Friends of the Earth v. Hintz, 800 F.2d 822, 831 (9th Cir.1986). Indeed, the Supreme Court has stated that
 
 
 15
 in making the factual inquiry concerning whether an agency decision was "arbitrary or capricious," the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." This inquiry must "be searching and careful," but "the ultimate standard of review is a narrow one." When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.
 
 
 16
 Marsh, 490 U.S. at 378 (citation omitted).
 
 
 17
 The district court's "Memorandum Opinion and Order," dated November 30, 1989, and its "Memorandum Opinion and Findings of the Court on Plaintiffs' Motion for Preliminary Injunction" ("Dist.Ct.Findings"), filed May 26, 1989, demonstrate that it focused on the administrative record. Indeed, the district court cited to ample evidence to support the conclusion that the agency actions were not conducted in an arbitrary or capricious manner. Clearly, there are disputes about, for instance, the ultimate impact of fracturing the bosque, the potential for secondary impacts arising from the project, and the availability of alternative forms that the project could take. However, we agree with the district court that there was ample evidence to affirm the agency's finding of no significant impact for purposes of NEPA under the "arbitrary or capricious" standard of review. We review the different areas of dispute.
 
 A. The Bosque and Wetlands Issues:
 
 18
 The district court found that the environmental assessment and administrative record disclosed that the preservation of the bosque and potential adverse effects were discussed at length. We agree and have reviewed this record. See Environmental Assessment ("EA") at 10-13, 24-27, 35, 46-47; Administrative Record ("AR") Vol. III at 270-271, 288-89, 320-21, 326-27. We do not agree with appellants' assertion that "The Record is Inadequate to Support the Corps' 'No Wetlands' Finding" concerning the Bosque. Appellants' Br. at 37. We have examined the evidence on this issue, and find it adequate to support the agency's finding. Indeed, the district court paid particular attention to this determination by the Corps, and we agree that the agency had the benefit of ample studies and reports on the topic. See Dist.Ct.Findings at 31-32.
 
 B. Secondary and Cumulative Impacts:
 
 19
 On the issue of secondary and cumulative impacts, we agree with the appellants that projects may have "synergistic effects which make[ ] their cumulative impacts relevant to the significant impacts determination." Appellants' Br. at 16-17 (footnote omitted). This alone, however, does not mean that the agency was arbitrary or capricious in finding that the secondary and cumulative impacts did not create a significant impact under NEPA. There is ample evidence on the record, recited by the district court, see Dist.Ct.Findings at 13-16, which we have reviewed, to demonstrate that effects on noise level, air quality, and traffic and other potential impacts were all adequately considered. See EA at 15-16, 21, 24; AR Vol. IV at 443; Vol. VI at 834-45.
 
 C. Alternatives:
 
 20
 We agree with appellees that the "district court's extensive discussion of the Corps' consideration of alternatives is thorough and well-reasoned." Appellees' Br. at 30. We have reviewed the evidence upon which the district court relied, and agree that "[a]lthough this Court feels that alternatives for accomplishing the overall goal probably exist, the Court's role is only to assure that the Corps properly studied plausible alternatives." Dist.Ct.Findings at 24. Alternatives are always possible, and we believe that the agency properly considered and weighed such contingencies. See EA at 2-5, 44; Dist.Ct.Findings at 20-25.
 
 
 21
 This evidence is more than enough to support an affirmation of the district court's granting of summary judgment. Although parties will always disagree over agency determinations, "[t]he question[s] presented for review in this case [are] classic example[s] of a factual dispute the resolution of which implicates substantial agency expertise." Marsh, 490 U.S. at 376. Thus, we have approached the review under the deferential standard of whether the actions were arbitrary or capricious, and affirm the district court's granting of summary judgment.
 
 
 22
 II. No Error In Court's Refusal To Consider New Evidence
 
 
 23
 The appellants' second and fourth issues essentially allege that the district court limited the range of evidence it would hear and refused to consider new evidence that was placed before it on the motion for summary judgment. In particular, this evidence related to issues of public nuisance such as noise and population levels and the fracturing of the Bosque.
 
 
 24
 We agree with the appellees that "the district court properly heeded the general rule that judicial review of agency action is limited to review of the administrative record." Appellees' Br. at 34. The Supreme Court has stated in no uncertain terms that
 
 
 25
 ordinarily review of administrative decisions is to be confined to "consideration of the decision of the agency ... and of the evidence on which it was based." "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."
 
 
 26
 Florida Power Comm'n v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 331 (1976) (citations omitted). There are sound reasons why some technical questions are delegated to the agency inquiry and decision process, with courts playing a role of review. In this case, the agency was the appropriate place to litigate this matter, and the district court did not err by limiting the evidence it heard and thereby preventing the appellants from possibly relitigating the case in its forum. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 553-54 (1978).
 
 
 27
 Notwithstanding its own holding limiting the evidence, the district court took into account the new evidence and found that "[e]ven if the Court were to consider the 'nuisance' evidence, it does not establish that the federal defendants acted arbitrarily or capriciously." Dist.Ct.Opin. at 5. On appeal, we have reviewed this new evidence and agree with the conclusion of the lower court. Thus, we affirm on this alternative ground.
 
 
 28
 III. Irreparable Harm Is Not Equal To Significant Impact
 
 
 29
 In its ruling, the district court stated "that the 'fracturing' of the Bosque will cause irreparable and irretrievable injury to the Bosque itself." Id. Appellants seize upon this statement to argue that "[h]aving found irreparable and irretrievable harm to the Bosque, the Court was required to remand for appropriate evaluation by the Corps." Appellants' Br. at 45. We disagree with this contention, and note that the district court also stated "that the Corps of Engineers properly put these considerations through its own balancing test, and determined that on balance the Montano Bridge site was the most appropriate for accomplishing the applicants' purposes." Dist.Ct.Opin. at 5.
 
 
 30
 We simply cannot agree with the appellants' contention that, in essence, the district court's statement concerning irreparable injury mandated a remand on the issue of whether there was a significant impact under NEPA. Whenever there is an undertaking of the magnitude of the Montano Bridge project, there may be some irreparable injury inflicted upon the surrounding area. All parties, including the district court, appear to agree on that proposition. However, it does not follow that therefore there is a significant impact as that term is meant under NEPA. Thus, we find no error in the fact that the district court did not remand the case after stating that irreparable injury would occur to the Bosque because some of it would be lost during the project.
 
 
 31
 IV. No Error Concerning Fish And Wildlife Service Actions
 
 
 32
 We disagree with the appellants that the "Fish and Wildlife Service ["FWS"] ... has failed to fulfill its responsibilities under the Fish and Wildlife Coordination Act," Appellants' Br. at 48, by failing to recommend that the project not proceed, and that therefore the Fish and Wildlife Service somehow acted arbitrarily or capriciously. We first note that it is uncontested by the appellants that "the Corps adopted all of the FWS recommendations," and that they "were incorporated into the permit as Special Conditions." Appellees' Br. at 41; see also Dist.Ct.Findings at 32-33.
 
 
 33
 Additionally, we agree with appellees that "[t]his case is an example of the benefits of the process," to the extent that the Corps appears to have worked with the Fish and Wildlife Service and given its suggestion serious consideration. See EA 27-28; AR Vol. I Tab A at 4; Fish and Wildlife Service AR Supplemental Vol. IV at 10, 12-14, 21. The FWS did not violate any of its legal obligations in failing to recommend a "no project" alternative in this case and what input that FWS did offer was adequately considered by the Corps.
 
 
 34
 It would unduly prolong this Order were we to address each other dispute raised by appellants. Suffice it to say that we have carefully reviewed the record and in all regards complained of by appellants we have concluded that the district court order should be AFFIRMED.
 
 
 
 *
 The Hon. Ruggero J. Aldisert, Senior Circuit Judge for the Third Circuit, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3