Arlyn **TOKAR, James Tokar** and **Anthony Tokar, Plaintiffs-Appellants,**

v.

Colonel **Richard E. HEARNE,** United States Air Force, et al., **Defendants-Appellees.**

No. 82–1254
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 7, 1983.

Rehearing and Rehearing En Banc
Denied April 4, 1983.

O'Shea & Hall, P.C., John J.C. O'Shea, Lubbock, Tex., for plaintiffs-appellants.

Paulina M. Jacobo, Asst. U.S. Atty., Lubbock, Tex., for defendants-appellees.

Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

### I.

Arlyn Tokar, wife of a retired serviceman, and her two sons, James and Anthony, filed suit against Colonel Richard Hearne, the Base Commander of Reese Air Force Base, and others for barring her from entering the base for a period of three years. Mrs. Tokar claims that such disbarment was issued in violation of her due process rights under the fifth amendment. Jurisdiction was premised on 28 U.S.C. § 1331. The district court, after a trial on the merits, denied relief to the plaintiffs and Tokar has appealed. After thoroughly reviewing the record and the applicable law, we affirm.

### II.

Arlyn Tokar, at the time of the incident in question, had been married for seventeen years to retired Staff Sergeant Anthony Tokar. As dependents of a United States Air Force serviceman, Mrs. Tokar and her two sons were privileged to use air force base facilities including the base commissary, the post exchange, and other recreational facilities. By letter of September 18, 1980, Colonel Richard Hearne advised Mrs. Tokar that an investigation had disclosed that she was involved in an incident at Reese Air Force Base in which she assaulted an individual by throwing a drink in his face. He warned her by this letter that he would not tolerate such incidents at the Reese Air Force Base installation and that further misconduct on her part at the Air Force base might result in an order barring her from the base.

Less than a year later a subsequent investigation disclosed that Mrs. Tokar was involved in another incident at the Reese Air Force Base Bachelor Officer's Quarters on July 19, 1981. The evidence showed that she was on base without a valid identification card and that she may have planted marijuana in an automobile of Lt. Shipp, a student pilot, in order to cause adverse disciplinary action against this student. In a letter to Mrs. Tokar dated July 23, 1981, the Base Commander, Colonel Hearne, stated that, based on the September 7, 1980, and July 19, 1981, incidents and the invalid ID card, he had determined that "your further presence on Reese Air Force Base would be contrary to good order and discipline." The letter then ordered Mrs. Tokar not to reenter the base for a period of three years.

The letter further notified Mrs. Tokar that she would have fifteen days to request a modification or termination of the disbarment order:

3. Should any compelling reasons exist which you believe to be sufficient to justify a modification or termination

of this order, you should, within 15 days of receipt of this letter, submit such request to this headquarters, ATTN: Chief of Security Police, for my consideration.

At the bottom of the letter Mrs. Tokar wrote the names of four people and their telephone numbers with the following message:

Sirs:

Here's names of persons who can verify me that July 18, 1981, up to 3:00 a.m., Sunday, July 19, 1981.

Lawrence Carter-Duty PH. # 3296

Roy Raymond-Duty PH. # 3370

Marty Harbison-PH. 799–6873

Nancy Kamper-PH. 799–0910

I now have a new identification that expire in 1984; here a letter for you to read, written to me.

[Signed]     Arlyn D. Tokar

PS. I'm carrying Shipp's child.

Mrs. Tokar mailed the letter with the note to "Hearne" at Reese AFB, TX within the fifteen-day limit. The note did not request a reconsideration of the disbarment order. Mrs. Tokar did not take any further steps to request a modification or termination of the order nor did she request a hearing on the matter.

On October 29, 1981, Mrs. Tokar filed suit in federal court against Colonel Hearne, three other officers of the United States Air Force, the Secretary of the Department of the Air Force, and the Secretary of Defense. The complaint sought declaratory and injunctive relief and $12,000 in damages. On the same date Mrs. Tokar filed a Motion for a Temporary Restraining Order and a Preliminary Injunction. A hearing was held on the latter motion on November 6, 1981. After ascertaining that Mrs. Tokar and her two sons each now had a valid identification card, that the disbarment order did not apply to Mrs. Tokar's two sons, and that each of the plaintiffs was permitted by law to go on the base for medical treatment, the district judge denied issuance either of a temporary restraining order or of a preliminary injunction. A bench trial on the merits was held on April 5, 1982. After finding that the defendants had not acted in an arbitrary or capricious manner and after considering the reasonableness of the order barring Mrs. Tokar from the base, the court found that the defendants were fully authorized to deprive Mrs. Tokar of the privilege of entering Reese Air Force Base, including its post exchange, commissary and recreational facilities. The judge thus denied all relief requested by the plaintiffs. The Tokar plaintiffs filed a timely appeal.

## III.

On appeal, Mrs. Tokar contends that she was denied a property right without notice and hearing in violation of the fifth amendment and that the base commander's decision to bar her from the base was arbitrary and capricious because it was made without a sufficient factual basis and without objective standards.

### A.

Mrs. Tokar contends that she was entitled to notice and a hearing prior to being barred from Reese Air Force Base. She contends that the benefits derived from using the base commissary, base exchange, or other base facilities constituted a "property interest" protected by the due process clause of the fifth amendment. Therefore she submits that she may not be deprived of this interest without notice and a hearing.

At the outset we would note that Mrs. Tokar argues that she was summarily barred from the base "without notice," and that she had no opportunity to dispute the base commander's allegedly "wild" allegations. The record belies these arguments.

In the September 1980 letter, the base commander clearly informed Mrs. Tokar that "any further misconduct on your part at Reese Air Force Base may result in my ordering you not to reenter this base." Moreover, her counsel stated at trial that "we don't contest the notice in any way . . . she did get notice."

Additionally, in the letter barring her from the base, Base Commander Hearne offered Mrs. Tokar an opportunity to present her side of the story. At trial, Mrs. Tokar admitted that she did not request a hearing and that she did not ask for any modification or for termination of the order.

Mrs. Tokar further argues that barring her from the base also effectively bars her two sons from using the base facilities because of their inability to drive. We would note that Mrs. Tokar's children at the time of the trial on the merits on April 5, 1982, were 19 years old and 13 years old. In addition to public transportation to the base, Mrs. Tokar is capable of driving either or both of her sons to the front gate of the base. Thus while barring Mrs. Tokar's entry may impose a minor inconvenience on her sons, it surely does not effectively prohibit their entry. Each of her sons has a valid military identification card, and her older son stated that he had the ability to drive but that his driver's license had been suspended and he was unable to drive at the time of the hearing.

We thus proceed to determine what procedures due process required in this situation. In a similar case, where a civilian was barred from a military installation, the Supreme Court stated:

> The fifth amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest.... [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved as well as of the private interest that has been affected by governmental action. Where it has been possible to characterize that private interest (perhaps an oversimplification) as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constitutionally required.

*Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 894–95, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961).

Eight years later in a case remarkably similar to the one at bar, this court was called on to determine whether the civilian son of a serviceman could be barred from reentering an air force base without notice and without a prior hearing on the merits. *United States v. Jelinski,* 411 F.2d 476 (5th Cir.1969). There we stated that, in light of *Cafeteria Workers,* the base commander was not required to afford notice and a hearing to the appellant prior to barring him from the base. *Jelinski,* 411 F.2d at 477. We further stated:

> We do not doubt the Commander's historically recognized authority to summarily bar civilians from a military establishment in the exercise of his discretion in managing the internal operations of the military facilities. Conversely, appellant's primary interest in entering the base was the slight economic advantage gained through his use of the military facilities.

*Jelinski,* 411 F.2d at 478.

Here Mrs. Tokar's alleged primary interest was to save money: to buy groceries and clothing for her family at allegedly greatly reduced prices. This is the same type of interest which was considered one of "slight economic advantage" in *Jelinski.* 411 F.2d at 478. The government's interest, on the other hand, consisted of the base commander's authority to maintain discipline and order on the base and to ensure its smooth operation. Balancing the two interests, the government's interest greatly outweighs that of Mrs. Tokar. A military base commander has authority to exclude a civilian from his base, *see Cafeteria Workers,* 367 U.S. at 890–94, 81 S.Ct. at 1746–48, even though the civilian, who is otherwise entitled to base privileges is a dependent of a serviceman. *See Jelinski,* 411 F.2d at 477–78. Moreover, the base commander need not afford notice and a hearing prior to barring a civilian from the base where the primary interest in entering the base was "the slight economic advantage gained through [the] use of the military facilities". *Jelinski,* 411 F.2d at 478.

Mrs. Tokar argues that *Jelinski* does not govern this case because she had "immediate pressing needs" to buy at the reduced prices because of her "meager economic situation" and her desire "to remain free from public welfare." Thus she received more than a "slight economic advantage" from use of the military facilities.

We do not read *Jelinski,* however, as necessarily requiring a hearing if the economic loss is great, which here it is not. As we have noted, moreover, nothing in the record indicates any reason why either of Mrs. Tokar's sons or her husband, for that matter, can not take advantage of the reduced prices on the base since all of them have valid identification cards.

Mrs. Tokar further contends that a base commander's authority summarily to bar civilians from his base depends on whether the mission of the base is a classified one, as was the case in *Cafeteria Workers* and that, in light of the harsh and unwarranted duration of her exclusion from the base, she should have been offered a hearing.

■ Neither *Jelinski* nor *Cafeteria Workers* limits the applicability of the historically recognized authority of commanders summarily to bar civilians from military facilities to situations involving a "classified mission" or to exclusions of short duration. We find no reason to do so here. A commander's discretion to maintain a military installation and to manage military personnel is essential regardless of the nature of the base's mission, and that discretion necessarily extends to determining the duration of a disbarment order.

### B.

Mrs. Tokar next contends that the base commander's decision to bar her from the base was arbitrary and capricious. She argues that that decision was made without sufficient factual basis and without objective standards. The arbitrary and capricious nature of the decision allegedly stems from the facts that the order barring Mrs. Tokar effectively barred her two sons "because of their inability to drive;" no hearing was provided; no investigation was made of Mrs. Tokar's four witnesses; barring Mrs. Tokar for the maximum period of time bore no relation to the alleged misconduct; Mrs. Tokar did not interfere with the mission of the base; Colonel Hearne testified that an older women's involvement with a younger man was a sufficient basis for issuing an order barring the older woman from the base; and no objective standards existed to curb the base commander's unbridled discretion.

We have already noted that the order did not bar Mrs. Tokar's sons from the base and that no hearing was required. In regard to the base commander's failure to investigate Mrs. Tokar's four witnesses, Colonel Hearne testified that he did not investigate the witnesses because he had sufficient evidence from his security police on which to make a judgment. A review of the record fully supports that judgment.

■ As for Mrs. Tokar's interference with the mission of the base and the length of her disbarment from the base, we note, as stated in *United States v. Flower,* 452 F.2d 80, 86 (5th Cir.1972), that the base commander can best determine what is necessary for the discipline, loyalty, morale of the military personnel on the base, the maintenance of the military mission, and the safeguarding of military personnel.

A base commander has wide discretion as to whom he may exclude from his base. A court will disturb the exercise of this discretion only upon a showing that the grounds for exclusion were patently arbitrary or discriminatory. *See Bridges v. Davis,* 443 F.2d 970, 973–74 (9th Cir.1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972), *citing Cafeteria Workers; United States v. May,* 622 F.2d 1000, 1006 (9th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980).

■ We have thoroughly reviewed the evidence and we find there was ample evidence to support Colonel Hearne's actions. We thus affirm the district court's findings and its conclusion that the decision to bar Mrs. Tokar was not arbitrary and capricious.

AFFIRMED.