Andres SERRANO MEDINA,
Plaintiff, Appellant,

v.

UNITED STATES of America, et al.,
Defendants, Appellees.

No. 82–1702.

United States Court of Appeals,
First Circuit.

Argued Feb. 8, 1983.

Decided May 10, 1983.

As Amended on Denial of Rehearing
June 13, 1983.

Robert J. Walser, San Juan, Puerto Rico, for plaintiff, appellant.

Alex H. Adkins, Trial Atty., Dept. of the Navy, Washington, D.C., with whom Daniel Lopez Romo, U.S. Atty., and Osvaldo Carlo Linares, Asst. U.S. Atty., San Juan, Puerto Rico, were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Appellant Andres Serrano Medina ("Serrano") is a taxi driver and former cook for the Antilles Consolidated School System at the United States Naval Station, Roosevelt Roads, Puerto Rico. Because of the revocation of his permit to enter the Naval Station, he lost his job as a cook and his right to operate his taxi on the base. He brought this suit against the base commander, the United States, and the school system seeking reinstatement, back pay, reissue of his identification cards, and relief from the debarment order. The district court granted summary judgment for the defendants.

On January 8, 1978, Serrano was driving a United States marine onto the base in his taxi. His brother, Jose Serrano Medina, was also in the car. Acting on a tip, Naval security agents stopped them. They found three small bags of marijuana on the marine, and several more under the taxi where Jose had apparently thrown them. A search of Serrano and, on his written consent, the car turned up nothing. The agents asked for Serrano's Navy identification card; when he produced it, they noticed a second card in his wallet, which he also handed them. One card was for the cook's job, the other for the taxi job. Although they had been issued only three days apart, one was a reissue of a two-year old card. On one, Serrano was pictured with a beard, while on the other he was cleanshaven; the height and weight figures given on the two cards were slightly inconsistent; and on one his name was given as Andres Serrano, on the other as Andres Serrano Medina. The agents confiscated the identification cards, which were destroyed five days later, and turned Serrano and his brother over to the Puerto Rico police.

A week later, Serrano and his attorney met briefly with the executive officer of the Naval Station,[1] Ward Serig, in an effort to obtain return of the cards, without which Serrano could not enter the base. Serig refused to discuss the matter until the criminal action was resolved. On March 30, while the Puerto Rico criminal charges were still pending, he issued a letter permanently barring Serrano from the base.[2] The complaint alleges that the debarment "is the direct cause that Serrano lost his job as a cook in the school and his business as a taxi driver."

Criminal charges arising out of the January incident were brought in Puerto Rico court. In April, the Navy also brought charges against Serrano in federal district court when statements by high school students on the base implicated him in further drug transactions. In May, after several continuances, the Puerto Rico action was dismissed. The United States Attorney la-

1. The executive officer is the second in command at the Station. For present purposes, we shall consider his authority coextensive with that of the commanding officer, from whom responsibility for this matter was delegated.

2. The letter read, in part,

On 9 January 1978 you were apprehended by the Naval Station Security Department when a substantial amount of marijuana was discovered in the vehicle which you were driving on the Naval Station. You were also in possession of two civilian worker's identification cards issued to you on 19 and 22 August 1977. Both identification cards were found to bear your photograph although they were filed under different names and contained dissimilar descriptions of your physical characteristics. This is in violation of Naval Station Regulations and constitutes an act of fraud against the United States Government.

. . . .

As a result of your involvement in the aforementioned incident, you are hereby barred from entering the Naval Station, Roosevelt Roads.

ter requested dismissal of the federal charges, which was granted in July.

On November 7, and again on November 27, Serrano's attorney requested in writing the return of the identification cards; this was refused by a letter from the commanding officer dated December 1, 1978. The letter acknowledged that Serrano had "been absolved of any guilt in the [criminal] charges," but asserted that he "remained guilty" of fraud against the government in possessing inconsistent identification cards. It reiterated that he was barred from the station and would be prosecuted as a trespasser if he were observed thereon. A week later Serrano's attorney sent a letter requesting a meeting with the commanding officer; this was refused. Finally, on December 15, Serrano and his attorney went to the base in an effort to speak with the commanding officer. They were denied admission. This suit followed in January 1979.

### I.

Several of appellant's arguments may be quickly rejected. First, Serrano claims he should have been allowed to amend his complaint. The district court did allow the complaint to be amended once, in October 1979. More than two years after the original complaint had been filed, in March 1981, Serrano moved to amend again by adding a number of new defendants in support of a conspiracy theory. The motion was denied. 541 F.Supp. 719 (D.P.R.1982). Serrano now appeals from that ruling, describing it as a denial of due process.

■ We find no error in the court's denial of leave to amend. Plaintiff's motion was unduly delayed. He claims that he was not aware of the extent of or participants in the alleged conspiracy until mid-1980. Yet the alleged conspirators were the commander of the base and the agents who stopped Serrano's car. As early as February 1979 they had been summoned as witnesses in the Puerto Rico criminal action. Serrano states that after he discovered the conspiracy he was still obliged to put off any amendment because of "an intolerable

personal situation," *viz.,* fear that amendment of the complaint and subsequent discovery would implicate his half-brother and subject him to criminal prosecution. Only once the statute of limitations had run on the criminal offense did Serrano seek leave to amend the complaint. We do not think his desire to hide the criminal behavior of his half-brother provided any proper justification for the further period of delay. *See Hayes v. New England Millwork Distributors, Inc.,* 602 F.2d 15, 19–20 (1st Cir.1979). The district court was entitled to believe that allowance of the eleventh-hour amendment would result in undue prejudice to the defendants, as it added new parties (at least some of whom were no longer even in Puerto Rico), and by raising new and separate claims would require additional research and discovery. We find no abuse of discretion. *See Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 896 (1st Cir.1979) (denial of leave to amend shall be reversed only for abuse of discretion).

■ The district court also properly found that it lacked jurisdiction over the claims, all for money damages, against the United States. No contractual claim can be made out under the Tucker Act, 28 U.S.C. § 1346(a)(2), as the United States is not a party to the collective bargaining agreement, the only contract involved, and Serrano was paid out of nonappropriated funds. *See generally Standard Oil Co. v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942); H.R.Rep. No. 933, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 3477, 3478–79. Nor can Serrano recover in tort under section 1346(b). Debarment from a military installation falls within the discretionary function exception to the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(a); *Kiiskila v. United States,* 466 F.2d 626, 628 (7th Cir. 1972).

■ It is also clear that the district court properly dismissed Serrano's claim under 42 U.S.C. § 1985. The complaint does not mention a conspiracy or state facts from which the existence of a conspiracy might

be inferred. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

## II.

This brings us to Serrano's principal allegations: that the debarment involved a denial of due process and was so arbitrary that it cannot stand. The district court found that no liberty or property interest existed to trigger due process protections, and that the debarment was not patently arbitrary. Because these conclusions were necessarily based in part on submissions outside the pleadings, we treat the decision below as a grant of summary judgment. *See* Fed.R.Civ.P. 12(b), (c); *id.* 56. We may affirm only if, looking at the record in the light most favorable to appellant, there is no genuine issue of material fact and appellee is entitled to judgment as a matter of law. *E.g., Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

### A. *Military Discretion*

Our law has accorded significant autonomy to the military with respect to civilian and judicial interference. The military "constitutes a specialized community governed by a separate discipline from that of the civilian." *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). The "overriding demands of discipline and duty" render it "a specialized society separate from civilian society." *Parker v. Levy,* 417 U.S. 733, 743–44, 94 S.Ct. 2547, 2555–56, 41 L.Ed.2d 439 (1974). *See also Department of the Air Force v. Rose,* 425 U.S. 352, 367–68, 96 S.Ct. 1592, 1602, 48 L.Ed.2d 11 (1976). Of necessity, the military constitutes "a system that stands apart from and outside of many of the rules that govern civilian life in our country." *Greer v. Spock,* 424 U.S. 828, 843, 96 S.Ct. 1211, 1220, 47 L.Ed.2d 505 (1976) (Powell, J., concurring).

This status creates particular tensions when the military and civilian realms conjoin. Frequently, it is the civilian that must yield to the military, for "the special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale." *Brown v. Glines,* 444 U.S. 348, 360, 100 S.Ct. 594, 602, 62 L.Ed.2d 540 (1980) (upholding Air Force regulations requiring commanding officer's approval before petitions may be circulated on the base); *see also Secretary of the Navy v. Huff,* 444 U.S. 453, 100 S.Ct. 606, 62 L.Ed.2d 607 (1980) (upholding equivalent Navy regulations); *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (upholding exclusion of politically oriented speakers from Army base). In particular, the commanding officer of a military base has broad authority and discretion to exclude civilians from the base. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 893, 81 S.Ct. 1743, 1747, 6 L.Ed.2d 1230 (1961); *United States v. May,* 622 F.2d 1000 (9th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980); 32 C.F.R. §§ 700.702(a), 700.715; H. Moyer, *Justice and the Military* § 4–520 at 521 (1970).

In *Cafeteria Workers* Rachel Brawner, a cook at the Naval Gun Factory, was relieved of her identification badge and denied access to the base, without notice or hearing, because of an unspecified failure to meet security requirements. Noting "the historically unquestioned power of a commanding officer summarily to exclude civilians from the area of his command," 367 U.S. at 893, 81 S.Ct. at 1748, and the regulatory provision, still in existence, that civilian employees were to be admitted only as authorized by the commanding officer, the Court found that the commanding officer clearly had the authority to exclude Mrs. Brawner. Nor was the summary procedure a denial of due process. The Court balanced the government's traditionally unrestrained control of its own internal affairs against Mrs. Brawner's private interest in pursuing her job at that location—"a mere privilege subject to the Executive's plenary power," *id.* at 895, 81 S.Ct. at 1749—and concluded that no process was due.

The only glimmer of encouragement in *Cafeteria Workers* to persons situated like appellant occurs in its acknowledgment that state and federal governments "do not constitutionally have the complete freedom of action enjoyed by a private employer." *Id.* at 898, 81 S.Ct. at 1750. The Court went on to say in this regard,

> We may assume that Rachel Brawner could not constitutionally have been excluded from the Gun Factory if the announced grounds for her exclusion had been patently arbitrary or discriminatory—that she could not have been kept out because she was a Democrat or a Methodist. It does not follow, however, that she was entitled to notice and a hearing when the reason advanced for her exclusion was, as here, entirely rational and in accord with the contract with M & M.

*Id.* Beside the above, the Court suggested only one other circumstance giving rise to a constitutional claim—"where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity." *Id.*

**B. *Due Process***

■ *Cafeteria Workers* is frequently cited for the proposition that a commanding officer may summarily exclude civilians from his base. *E.g., Tokar v. Hearne,* 699 F.2d 753, 756 (5th Cir.1983); *United States v. Gourley,* 502 F.2d 785, 786–87 (10th Cir. 1973) ("well recognized that the commander of a military installation has and must have the broad authority and discretion to summarily exclude persons therefrom"); *Government of the Canal Zone v. Brooks,* 427 F.2d 346, 347 (5th Cir.1970) (well estab-

lished that commanding officer "has the right to summarily exclude civilians from the installation without violating the requirements of the due process clause"); *United States v. Jelinski,* 411 F.2d 476, 477 (5th Cir.) (no due process violation where subject barred without notice or hearing), *cert. denied,* 396 U.S. 943, 90 S.Ct. 380, 24 L.Ed.2d 245 (1969); H. Moyer, *Justice and the Military* § 4–521 (1970). Despite *Cafeteria Workers*'s clear holding and this consistent line of precedent,[3] appellant contends that he has a fifth amendment right to notice and a hearing before being disbarred. It is quite clear that he received neither. However, we agree with the district court that he had no right thereto. This case is squarely within the explicit holding of *Cafeteria Workers* and its progeny.[4]

It is true that due process jurisprudence has undergone significant changes since *Cafeteria Workers,* which was decided in 1960, and that that case makes use of the right/privilege distinction subsequently abandoned by the Court. *Compare Cafeteria Workers,* 367 U.S. at 895, 81 S.Ct. at 1748, *with Board of Regents v. Roth,* 408 U.S. 564, 571 & n. 9, 92 S.Ct. 2701, 2706 & n. 9, 33 L.Ed.2d 548 (1972). Nonetheless, the factors that persuaded the Court that presence on the base was a mere "privilege" persuade us that Serrano did not have a "legitimate claim of entitlement" to continued admission to the base. No statute, regulation, or contract appears to establish such an entitlement. *See generally Perkins v. Board of Directors,* 686 F.2d 49 (1st Cir. 1982). To the contrary, admission to the base is contingent on the commanding officer's authorization. *See* 32 C.F.R. §§ 700.-

**3.** The one possible exception to this line of cases that we have found is *Kiiskila v. United States,* 433 F.2d 745 (7th Cir.1970) (en banc), which found a bar order invalid because it was issued in response to Kiiskila's exercise of her first amendment rights. The court stated in dictum that "[a]bsent explicit authorization, a military commander may not exclude a civilian employee from a military installation without a hearing." *Id.* at 747 n. 1 (citing *Cafeteria Workers*). Even if this were true, such explicit authorization may be assumed to exist here as

the relevant regulations are exactly those relied on by the Court in *Cafeteria Workers.*

**4.** Appellant argues that *Cafeteria Workers* applies only when the debarment is based on security concerns. The distinction is hardly helpful here—keeping drugs off base may be as much a "security" concern as keeping out spies. Nothing in *Cafeteria Workers* or subsequent case law suggests that the commander's authority is less extensive in situations not involving classified information. *See Tokar v. Hearne,* 699 F.2d at 757.

714, 700.715. The commanding officer's responsibility is "absolute," and his "authority . . . is commensurate with his responsibility." *Id.* § 700.702(a). Nor is there any allegation of a de facto system of continuing admission. *See Beitzell v. Jeffrey,* 643 F.2d 870 (1st Cir.1981). We therefore think that the district court correctly concluded that Serrano enjoyed no property right requiring the protections of due process. *See Bleeker v. Dukakis,* 665 F.2d 401 (1st Cir. 1981).

Appellant asserts, however, that he has at least a liberty interest, affected by his disbarment, requiring due process protection. While a public charge of drug selling is the sort of serious charge that might infringe upon a liberty interest, *see Ventetuolo v. Burke,* 596 F.2d 476, 484 & n. 13 (1st Cir. 1979), this charge was never specifically articulated or made public, *see id.* As the district court noted, Navy regulations protect personnel records from public disclosure, and there is no evidence of public stigma here. *Harrington v. United States,* 673 F.2d 7, 11 (1st Cir.1982).

We do not believe the district court erred in finding that there was no protected interest infringed by appellant's summary debarment. While the commanding officer or his subordinate might have handled the incident with greater fairness and tact, the power to exclude civilians summarily has been acknowledged by almost every court to consider the matter. And for good reason, as it "is a necessary concomitant of the basic function of a military installation," *Greer v. Spock,* 424 U.S. at 838, 96 S.Ct. at 1217, and "of the commander's duty to maintain the order, security, and discipline necessary to military operations," *United States v. Gourley,* 502 F.2d at 786–87.

### C. *Arbitrariness*

 Although appellant had no right to continued admission to the base, he could not have been excluded for reasons that were patently arbitrary or discriminatory; for example, on the grounds of race or religion. *See Cafeteria Workers,* 367 U.S. at 897–98, 81 S.Ct. at 1749–50; *Wieman v.*

*Updegraff,* 344 U.S. 183, 192, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952). The same standards would not apply if it appeared that appellant had been excluded for the exercise of first amendment or other constitutional rights. *See, e.g., Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972); *Kiiskila v. Nichols,* 433 F.2d 745 (7th Cir.1970) (en banc). However, the only claimed arbitrariness here is the lack of an adequate factual basis for the exclusion.

The language in *Cafeteria Workers* indicates that the factual basis behind the commander's allegations is not subject to judicial scrutiny. The Court was not willing to look behind the "*announced* grounds" for the exclusion; it upheld the exclusion because "the *reason advanced*" was "entirely rational." 367 U.S. at 898, 81 S.Ct. at 1750 (emphasis added). Thus, *Cafeteria Workers* would seem, at most, to allow us only to "question whether the allegations, assumed to be true, are such as would constitutionally permit an exclusion order to stand; that is, whether the assumed facts may constitutionally be the basis for the judgment that" Serrano merits exclusion. Lieberman, *Cafeteria Workers Revisited: Does the Commander Have Plenary Power to Control Access to his Base?,* 25 JAG J. 53, 56 (1970). To delve into the truth or falsity of the facts behind the exclusion would be to require the very hearing that appellant has been found not entitled to.

It is true that circuit court decisions subsequent to *Cafeteria Workers* have often seemed willing to question, within limits, not only whether the asserted reason for exclusion is sufficient but also whether that reason has a basis in fact. They phrase the issue as whether the exclusion itself, not just the proffered reason, is patently arbitrary or discriminatory. *See, e.g., United States v. May,* 622 F.2d at 1006; *Bridges v. Davis,* 443 F.2d 970, 973 (9th Cir.1971) (scope of review in challenge to debarment "extremely limited," but commander's wide discretion does not extend to patently arbitrary or discriminatory exclusions), *cert. denied,* 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d

789 (1972); *Committee to Free the Fort Dix 38 v. Collins,* 429 F.2d 807, 811 (3d Cir.1970); *Weissman v. United States,* 387 F.2d 271, 273 (10th Cir.1967) ("The question ... is whether the order was rational."); Lloyd, *Unlawful Entry and Re-entry into Military Reservations in Violation of 18 U.S.C. § 1382,* 53 Mil.L.Rev. 136, 142 (1971) (bar cannot be "arbitrary or capricious," *citing* Digs. Ops. JAG 1912, p. 267). Indeed, in the most recent of these cases, the plaintiff received a full bench trial on the merits. The district court concluded the bar order was reasonable, and the circuit court agreed that "there was ample evidence to support [the commander's] actions." *Tokar v. Hearne,* 699 F.2d at 757.

We need not now decide whether this willingness to look at the underlying factual support for a bar order is proper. The district court here determined that the commanding officer "had valid grounds for suspecting plaintiff and for deciding that it was best for his command area that he be excluded therefrom." Though the question is fairly close, the record revealing more than a little confusion on the part of the Navy, we would agree with the district court. The charge of identification card fraud seems insubstantial, but the concern as to appellant's involvement in drug sales is adequately supported. The circumstances were plainly suspicious; Serrano was accompanied in his taxi not only by a passenger who possessed marijuana but by his brother, who apparently tried to get rid of some marijuana when the stop occurred. While a taxi driver might not always be expected to vouch for every passenger, the presence of his brother in the taxi put matters in a different light. The record also contains three sworn statements by separate individuals identifying appellant as a drug supplier. A base commander has wide discretion as to whom he may exclude from the base, and there is evidence in the form of then current regulations that the military was deeply troubled by the trafficking in drugs on bases. We cannot say the exclusion of plaintiff in these circumstances was patent-

ly arbitrary or discriminatory. *See Bridges v. Davis,* 443 F.2d at 974 (Koelsch, J., concurring) ("substantial proof of actual misconduct" not required; bar orders should stand "even though the result of gossip and unconfirmed rumor").

III.

The complaint named not only the United States and the base commander as defendants, but also the school system in whose cafeteria Serrano had been employed. Appellant states that regardless of the outcome of his action against the United States, he has an independent and viable action against the school system for back pay and reemployment, if only at another facility. The district court did not address this claim in its opinion. It did, however, dismiss the action "as to all defendants."

It is not easy to discern the legal theory or factual basis on which appellant seeks to proceed against the school system. He does allege a breach of the collective bargaining agreement between the school system and his union. Yet the provision of the agreement to which he cites does not seem to exist. Moreover, in his brief he asserts that the agreement "expired on 25 August 1977, had not been renewed or otherwise kept in force, and was not in effect during any of the time periods of this case." Adding to the confusion is the fact that the school system itself denies that Serrano was even discharged.

Notwithstanding the above, and without meaning to intimate that the claim has any merit, we do not at this time sustain the dismissal as to the claim against the school system arising out of the employment relationship. The district court did not discuss the matter in its opinion, and we think Serrano should have an opportunity to justify the claim, if he can, upon a proper motion for summary judgment focusing on that issue. Accordingly while affirming the district court's judgment in all other respects, we vacate and remand as to so much of it as dismisses Serrano's claim for back

pay from and reemployment in the school system.

*So ordered.*