In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3352

BLACKOUT SEALCOATING, INCORPORATED,
KIMBERLY KOLINEK, and PAUL KOLINEK,

*Plaintiffs-Appellants,*

*v.*

TERRY PETERSON, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 C 4369—**Elaine E. Bucklo**, *Judge*.

ARGUED APRIL 11, 2013—DECIDED JULY 18, 2013

Before EASTERBROOK, *Chief Judge*, and MANION and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.   Blackout Sealcoating per-
forms asphalt paving work and other services for pub-
lic and private construction projects. Until spring 2012
the Chicago Transit Authority was among its clients.
Blackout's two contracts with the CTA were terminable
at will, and on May 8, 2012, the CTA informed Blackout

that it would not do business with the firm for the next year. The CTA calls such a decision debarment.

Because the contracts were terminable at will, Blackout could not get damages for breach—and at all events such a suit would belong in state court even if the firm asserted that breach of contract deprived it of a property interest. See, e.g., *Mid-American Waste Systems, Inc. v. Gary*, 49 F.3d 286 (7th Cir. 1995); cf. *Simmons v. Gillespie*, 712 F.3d 1041 (7th Cir. 2013). Illinois law allows judicial review of public bodies' debarment decisions, see *Arroyo v. Chicago Transit Authority*, 394 Ill. App. 3d 822, 827 (2009), but Blackout did not avail itself of that opportunity. Nor did it use the law of libel, even though it insists that every public announcement of debarment is defamatory. The CTA announced the debarment without giving a public reason. During the litigation, the reason came out: Blackout had hired Michael Ferro, who was under debarment at the CTA. The CTA viewed this as a stratagem to evade its decision about Ferro. Blackout contends that it did not know of Ferro's debarment. The CTA's decision to employ a strict-liability or no-fault approach to derivative debarment may be harsh but would not be defamatory. But one way or the other defamation is a state-law issue that was never presented to the state judiciary.

Having foregone their opportunity to litigate statutory and common-law claims in state court, Blackout and its two owner-managers filed this suit in federal court under 42 U.S.C. §1983, contending that the CTA had deprived it of "occupational liberty" without

due process of law. The theory of such a suit, based on *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), as limited by *Paul v. Davis*, 424 U.S. 693 (1976), is that, even though defamation affects neither "liberty" nor "property" for the purpose of the fourteenth amendment, and even though Blackout lacked a property right in the at-will contract, defamation that substantially limits one's ability to pursue the common callings of life is a deprivation of liberty. The year's debarment has ended, but the case is not moot because plaintiffs seek damages.

The district court dismissed the complaint, ruling that it did not state a claim on which relief may be granted. 894 F. Supp. 2d 1067 (N.D. Ill. 2012). The court held that inability to work for a single employer does not deprive a person or corporation of occupational liberty—and that the complaint, which does not allege that plaintiffs bid for work at any other public agency after the CTA's decision, does not plausibly allege inability to work for public or private entities other than the CTA. See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

The district court's approach tracks this court's decisions in *Wroblewski v. Washburn*, 965 F.2d 452, 455 (7th Cir. 1992), and *McMahon v. Kindlarski*, 512 F.3d 983, 988 (7th. Cir. 2008), which hold that the removal of one job or employer from the universe of all jobs does not affect occupational liberty. Other circuits agree. See, e.g., *Serrano Medina v. United States*, 709 F.2d 104 (1st Cir. 1983); *Ferencz v. Hairston*, 119 F.3d 1244 (6th Cir. 1997); *Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1368 (11th Cir.

1991). The law could hardly be otherwise. To treat being suspended or fired by a single employer (that's what the CTA did to Blackout) as a deprivation of liberty or property would be to override the Supreme Court's conclusion that public employers need not give notice or hold hearings before ending at-will contracts. Compare *Board of Regents v. Roth*, 408 U.S. 564 (1972), with *Perry v. Sindermann*, 408 U.S. 593 (1972). The court held in *Roth* that, to have a protected interest, a person must have a "legitimate claim of entitlement" rather than just a hope or expectation. 408 U.S. at 577. A term contract can create a legitimate claim of entitlement until the term's expiration; an at-will contract does not. So Blackout had no entitlement to do work for the CTA, which therefore was not required to provide notice and a hearing unless its decision closed many other doors and effectively prevented Blackout from getting other people's business.

The complaint alleges that it had this effect, but the district judge thought the allegation implausible in the absence of a statute giving one agency's debarment an effect elsewhere, or a contention that Blackout had submitted the low bid for work elsewhere and been turned down. Repeated failure to get work under circumstances where success is normal could support an inference that debarment by the CTA amounted to blackballing from the industry. Blackout replies that, since its owners knew that bids would have been futile, there was no need to try—and that at the complaint stage the district court should have indulged that assumption in its favor.

Yet many a person fired by one employer can find a job at another. Debarment is either like firing or is equivalent to an employee's suspension for misconduct; neither necessarily means unemployment for life or even a need to change occupations. Plaintiffs' difficulty is not simply that Blackout failed to allege that it submitted bids to other public agencies (and for that matter failed to allege the effect of the CTA's decision on its portfolio of private contracts) but that Blackout concedes that it stopped bidding for public contracts. That would produce a failure of proof at trial as surely as it produced a speculative complaint. Plaintiffs might have made up for the lack of personal experience by showing what happened to other contractors that the CTA has debarred, but the complaint does not contain any allegations along those lines. The district judge thus acted within the scope of her authority under *Iqbal* and *Twombly* to distinguish plausible from speculative claims.

While the appeal was pending, Blackout submitted a bid to a public agency (a school district) and won the contract. It says that the contract was small and the process complex, since it had to persuade the school district that the CTA's decision did not imply that it was irresponsible. Blackout commendably brought this successful bid to our attention by a letter under Fed. R. App. P. 28. We do not rely on it as a reason to affirm; the record closed when the district court entered its judgment; but it certainly shows that the complaint's predictions of doom would be hard to support on summary judgment or trial.

Suppose the district judge erred in thinking the complaint too gloomy about Blackout's business prospects. What the due process clause requires is notice and an opportunity to respond—people "must be given *some* kind of notice and afforded *some* kind of hearing", the Supreme Court wrote in *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (emphasis in original). See also *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985); Henry J. Friendly, *"Some Kind of Hearing*," 123 U. Pa. L. Rev. 1267 (1975). Often an opportunity to comment in writing is all the hearing required. Indeed, that's all the hearing most litigants in federal court receive; trials occur in less than 5% of civil suits and are never necessary unless material facts are in dispute. In September 2010 the CTA sent Blackout a "notice of intent to debar." Blackout had, and used, the opportunity to respond in writing. The CTA sent an amended notice in March 2011; Blackout again replied in writing. Blackout has never argued that it did not employ Ferro; it argued only that it did not know about Ferro's debarment, and the CTA evidently thought that possibility immaterial.

In this court Blackout denigrates the two written exchanges. It contends that the CTA violated the Constitution by not providing a third round, after Marina Popovic, one of the CTA's vice-presidents, presented her recommendation to the CTA's Debarment and Suspension Committee. That strikes us as equivalent to arguing that a district court violates the Constitution if, after the briefs have been exchanged on a motion for summary judgment, the judge asks her law clerk for a memorandum and does not circulate that recommenda-

tion to the parties before acting on it. The due process clause requires notice and an opportunity to present one's position; it does not require an extended to-and-fro in which every internal recommendation kicks off a new round of submissions. Plaintiffs do not contend that the letters in September 2010 and March 2011 failed to notify it of the CTA's concerns. One opportunity to respond was enough; two was ample; the Constitution does not mandate a third. Perhaps Illinois law requires more, but plaintiffs rely exclusively on the Constitution.

One final comment. We have resolved this appeal on the assumption that corporations have "occupational liberty." It is not clear to us that this is so. Kimberly and Paul Kolinek assuredly have personal liberty, including occupational liberty. Whether personal liberty may be exercised through the corporate form is an issue that has occasioned disagreement among courts of appeals. Compare *Hobby Lobby Stores, Inc. v. Sebelius*, 2013 U.S. App. LEXIS 13316 (10th Cir. June 27, 2013) (en banc), with *Conestoga Wood Specialties Corp. v. Secretary of Health and Human Services*, 2013 U.S. App. LEXIS 2706 (3d Cir. Feb. 7, 2013). We need not pursue that subject today. What gives us pause about imputing "occupational liberty" to a corporation is that the claim is derivative. Corporations do not have occupations; they are legal constructs. If debarment sounds the death knell for Blackout Sealcoating, Inc., the Kolineks may be able to organize another firm through which to practice their occupation. The record does not show whether that would be feasible. We mention the issue only to show that we have not resolved it one way or the other. See also *Chicago*

*United Industries, Inc. v. Chicago*, 669 F.3d 847, 850 (7th Cir. 2012) (reserving the question).

AFFIRMED