**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT ALVAREZ; GEORG-
ANDREAS POGÁNY,

      Plaintiffs-Appellants,

v.

COL DAVID GROSSO, in his official
capacity; SGM MARK COOK, in his
official capacity; COL JOHN
IRGENS, in his official capacity; LTG
JOSEPH ANDERSON, in his official
capacity; COL JOEL HAMILTON, in
his official capacity

      Defendants-Appellees.

No. 15-1398
(D.C. No. 1:14-CV-01319-PAB-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL,** and **GORSUCH**, Circuit Judges.

---

The appellants seek access to Fort Carson, a U.S. Army base in Colorado.

For some time, they were able to enter the base and assist service members in

military administrative proceedings. But that came to an end in 2012 when the

Army issued an order barring their entry. An order the Army justified first by

---

[*] This order is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

asserting generally that the appellants' presence had proved disruptive to order and discipline — and then by more specifically explaining that the appellants had physically interfered with administrative discharge proceedings and encouraged a soldier to falsify symptoms of mental illness and "drool" in an attempt to evade a bad conduct discharge. In reply, the appellants filed this lawsuit, contending that the Army's stated rationales were false and that the order barring their entry violated their due process and free speech rights. The district court dismissed the appellants' complaint and it's this ruling we're now asked to review, though in the end we find ourselves affirming for essentially the same reasons the district court offered in its thoughtful opinion.

A military commander's power to exclude civilians from a military base is considerable and constitutional in origin, deriving from Congress's power to regulate the Army and Navy, and the President's authority as Commander in Chief. *See* U.S. Const. art. I, § 8; *id.* art. II, § 2; *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 890 (1961); *cf. Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."). Indeed, so long as Congress has authorized the commander in question to exercise discretion when deciding whom to admit to a military base, and so long as the commander hasn't exercised that discretion to permit civilians to enter freely and treat the base as a public

forum, the commander has "historically [enjoyed] unquestioned power . . . to exclude civilians from the area of his command" without the necessity of prior notice and hearing so long as his "announced grounds" for decision are not themselves "patently arbitrary or discriminatory." *McElroy*, 367 U.S. at 893, 898; *see also Greer v. Spock*, 424 U.S. 828, 840 (1976); *Flower v. United States*, 407 U.S. 197, 198 (1972) (per curiam); *United States v. Gourley*, 502 F.2d 785, 786-87 (10th Cir. 1973). Out of respect for the authority the Constitution affords Congress and the President over military affairs, and out of respect for the collective decision of these authorities to invest military commanders with near "unquestioned" authority over the administration of military installations, this deferential due process standard requires us to accept, not second guess, the veracity of the commander's stated reasons for action. So, for example, in *McElroy* the Supreme Court upheld a commander's exclusion of a civilian worker from a military base on the "announced ground" that she posed a "security" threat without any examination into whether the worker, in fact, posed such a threat. 367 U.S. at 898; *see also id.* at 899 (acknowledging that, "[f]or all that appears" in the record, it "may have [been] simply" that the commander thought the worker "garrulous"); *id.* at 901 (Brennan, J., dissenting) (observing that under *McElroy* "the mere assertion . . . that exclusion" is due to security reasons "forecloses further inquiry"). And in *Weissman v. United States*, this court, following *McElroy*, expressly held that "[a]s a matter of law there may be no challenge to

the [military commander's] statement of the reason for the bar order." 387 F.2d 271, 274 (10th Cir. 1967).

This precedent forecloses the appellants' due process challenge. The appellants do not question that Congress and the President have invested the commander in this case with wide discretionary authority to bar civilians from the base. *See* 18 U.S.C. § 1382; Army Regulation 190-16 § 2-2. Neither have the appellants preserved an argument that the commander used his authority to permit civilians to enter the base freely or treat any portion of it as a public forum. *See Alvarez v. Grosso*, No. 14-cv-01319-PAB-MJW, 2015 WL 5728499, *7-8 (D. Colo. Sept. 29, 2015). And their own complaint reveals that the commander's announced grounds for decision are not patently arbitrary or discriminatory, but focused on ending disruptions to military order and discipline like the physical interference with administrative proceedings and the suborning of false testimony. Of course, the appellants seek to challenge the truth of the commander's announced grounds for decision: they dispute that they ever disrupted proceedings or encouraged service members to testify falsely. But they do not suggest that the announced grounds are themselves arbitrary or discriminatory. And their effort to look behind or test the commander's announced reasons for his action is foreclosed by the deference *McElroy* and *Weissman* indicate we owe them.

Neither have the appellants offered us any way to avoid this conclusion, any way to distinguish or read *McElroy* or *Weissman* differently than we have here. The closest they come is to suggest a different result should obtain because it is 2016, not 1961 or 1967, when those decisions issued. But the vintage of a Supreme Court or Tenth Circuit precedent does nothing to render it less binding. If some reasonable way around these precedents exists, then, the appellants simply have not identified it to this court and so have waived it. For that matter, the appellants have not directed us to a single case in any circuit court granting relief where an excluded civilian sought to challenge the accuracy of a military base bar order that wasn't arbitrary or discriminatory on its face. *See Serrano Medina v. United States*, 709 F.2d 104, 109 (1st Cir. 1983) ("To delve into the truth or falsity of the facts behind the exclusion would be to require the very hearing that appellant has been found not entitled to."). To be sure, the appellants observe that some lower courts have assumed without deciding that they might be able entertain challenges to the factual assertions in a military bar order, but even here it appears the courts in question have done so only to the end of showing that the challenge would fail in any event. *See, e.g.*, *id.*; *Tokar v. Hearne*, 699 F.2d 753, 757 (5th Cir. 1983).

The appellants' First Amendment retaliation claim fails for similar reasons as their due process challenge. They assert that the commander barred them from Fort Carson in retaliation for exercising their constitutional right to speak. But

that begs the question whether the appellants in fact had a constitutionally protected right to speak on the base. *See Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (to establish a First Amendment retaliation claim a plaintiff must show, among other things, that he was engaged in "constitutionally protected activity"). And, as we have already noted, the appellants have failed to preserve any argument that Fort Carson qualifies as a public forum for speech by private citizens. *Cf. Greer*, 424 U.S. at 838; *Gourley*, 502 F.2d 787. Neither, for that matter, do we see any well-pleaded facts here suggesting that denying access to Fort Carson would be sufficient to "chill a person of ordinary firmness" from engaging in constitutionally protected speech outside the installation, another element essential to any First Amendment retaliation claim. *See Nielander*, 582 F.3d at 1165.

The appellants' remaining claims fail too. They contend that the bar order interferes with their right to observe court martial proceedings in violation of the First Amendment. But this court has held that the right to a public criminal trial did not entail a personal right of individuals to observe the trial in *United States v. McVeigh*, 106 F.3d 325, 335-36 (10th Cir. 1997), and the appellants do not offer us any argument for distinguishing that precedent. Besides, the appellants have not alleged that they ever sought permission to attend a court martial proceeding or that permission to do so has been denied. Everyone before us acknowledges, too, that the commander's bar order isn't absolute and expressly

permits the appellants to seek access to the base for specific purposes like this. And given that, it is altogether unclear whether a meaningful case or controversy about the mere attendance to observe proceedings will ever ripen here. *See Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004). The appellants seek to press various other theories for relief before us, including a First Amendment associational claim and a void for vagueness challenge, but they failed to pursue these in the district court and we decline to entertain them for the first time on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011).

The judgment of the district court is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge