**NOT PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 16-4153

TL OF FLORIDA, INC.,

Appellant

v.

TEREX CORP, d/b/a Terex Constructions America

On Appeal from the United States District Court
for the District of Delaware
(District Court No.: 1-13-cv-02009)
District Judge: Honorable Leonard P. Stark

Submitted under Third Circuit L.A.R. 34.1(a)
on July 13, 2017

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, Circuit Judges

(Opinion filed: August 29, 2017)

**RENDELL**, Circuit Judge:

In this appeal, Appellant TL of Florida, Inc. ("TL") challenges the District Court's grant of summary judgment in favor of the Appellee Terex Corporation ("Terex") in a dispute arising from its non-exclusive distributorship agreement. For the following reasons, we will affirm.

## I.

Terex, a Delaware corporation that sells heavy equipment such as articulated dump trucks as well as parts, and TL agreed in 2008 that TL would become a non-exclusive distributor of Terex parts in south Florida.[1] As part of the deal, TL was required to maintain a costly inventory of Terex heavy equipment. In 2013, however, TL brought this suit claiming that it was fraudulently induced into entering the agreement.

Specifically, it claims fraudulent non-disclosure, negligent misrepresentation, violation of the Florida Deceptive and Unfair Trade Practices Act, and violation of an implied covenant of good faith and fair dealing. TL alleges that: (1) Terex misrepresented there was a market for Terex heavy equipment in Southern Florida (the "Equipment Market Representation"); (2) Terex misrepresented there was a market for Terex parts in

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The agreement was amended in 2011 (the "2011 Distributorship Agreement;" collectively, the "Distributorship Agreements"). TL claims that the same misrepresentations, discussed *infra*, induced it to sign this amended agreement.

Southern Florida (the "Parts Market Representation"); (3) Terex failed to disclose that it "did not select distributors on the basis of demand in the marketplace or quality of the distributor," but entered distribution agreements with "any person who asked for it and had the financial ability to purchase [heavy equipment]" (the "Dealership Selection Representations"), JA59; and (4) Terex failed to disclose that TL was surrounded by other authorized sellers of Terex parts (called "CPEX Accounts") who, unlike TL, were not required to maintain an inventory of heavy equipment and supporting infrastructure and therefore could undersell TL (the "Dealer Representation and Omissions"). Had it known all of these facts, TL says it would not have entered into a distributorship relationship with Terex.

Earlier in the case, the District Court dismissed TL's claim of violation of the covenant of good faith and fair dealing for failure to state a claim, as well as all claims based on the Equipment Market Representation because they were barred under the applicable statute of limitations.[2] The District Court then granted summary judgment in favor of Terex on TL's remaining claims, holding that no reasonable juror could find for TL on its proffered theory of lost profit damages.[3] The District Court also rejected what

_____

[2] TL does not appeal these rulings.

[3] This Order appears to have resolved all claims with respect to the Dealership Selection Representations and Dealer Representation and Omissions. Shortly after this ruling, the parties stipulated to dismissal with prejudice of "any and all . . . remaining claim(s) related to the Parts Market Representations." JA4. As a result, the District Court's Order granting summary judgment to Terex on the issue of damages is a final order we may review.

Moreover, because we will affirm that holding, as well as the District Court's denial of leave to amend with respect to damages, we do not reach the District Court's alternative holding that Terex was entitled to judgment on the pleadings with respect to

3

it interpreted to be a materially different damages theory advanced by the Plaintiff at summary judgment as untimely. On appeal, TL primarily challenges these holdings as well as others. Because we agree with the District Court that TL has failed to provide sufficient evidence from which a jury could reasonably find for it on its damages theories, we will affirm.

II.[4]

We exercise plenary review over a district court's grant of summary judgment, applying the same standard that the district court should have applied. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001). A court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether there are any material issues of fact, we must draw "all justifiable inferences . . . in [the nonmovant's] favor." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The "mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Id.*

Although TL asserts a number of independent claims, its theories of damages were common to each. It advanced two. First, TL argued that it was entitled to lost profits from

---

all claims arising out of the Dealer Representation and Omissions and the Dealership Selection Representations.

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. The District Court's summary judgment Order as well as the parties' stipulation rendered the matter final. We therefore have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

4

sales that it could have made to the customers of CPEX Accounts. The District Court concluded that, because the record contained no evidence that CPEX Accounts sold Terex parts within TL's territory, TL could not prevail on this theory. Second, TL argued that it suffered losses from sales that Terex made directly to CPEX Accounts who operated in south Florida. The District Court rejected this second theory as "untimely" because it was a "new" theory of damages that had not been advanced until after discovery closed and shortly before trial was scheduled to begin. JA16. TL argues that both of these holdings were error. We address each in turn.

A. Lost Profits from Sales Made by CPEX Accounts to CPEX Account Customers

The District Court properly granted summary judgment regarding TL's claim for damages for lost profits from sales made by CPEX Accounts. The thrust of TL's Complaint was that it suffered damages from undisclosed CPEX Accounts who were selling Terex parts to TL's customers in TL's territory. As the District Court rightly noted, however, there is no dispute in the record that "CPEX [A]ccounts in Southern Florida were set up in order to export parts to end users outside the United States" where no Terex distributorships existed. JA 161. Nor was there any significant evidence that CPEX Accounts sold parts within TL's territory. TL, on the other hand, was expressly limited under the Distributorship Agreements to selling parts within its southern Florida territory only. On appeal, TL points out that the 2011 Distributorship Agreement prohibited only "active[] solicit[ation]" of sales outside of its territory, and the earlier 2008 Agreement contained no such limitation. As such, TL contends there is a genuine dispute of fact as to whether these foreign end users, in the absence of CPEX Accounts,

5

would have purchased their Terex parts in TL's territory, and whether TL would have had to actively solicit them to do so. We disagree.

Even if foreign end users could purchase parts from TL under the Distribution Agreements, TL cannot sustain its burden to survive summary judgment. There was nothing in the record to suggest that Terex's foreign end users, in the absence of competition from CPEX Accounts, would purchase Terex parts in south Florida, let alone from TL. TL points to its expert witness who generally opined that parts buyers like to purchase locally. But we see no evidence in the record from which a juror could reasonably infer that TL itself would be considered a "local" dealer to Terex's foreign end users, some of whom operate in Latin America, South America, and Africa. Indeed, TL could not produce a single record of a sale to a foreign user (and admitted as much at oral argument before the District Court). Rather, the record appears uncontested that TL did not even have a practice of soliciting such users outside its territory. We will therefore affirm this portion of the District Court's ruling.

B. Lost Profits from Sales Terex Made Directly to CPEX Accounts in South Florida

The District Court did not address this theory on the merits, but found that it was not advanced in a timely manner. TL attacks this ruling primarily on two fronts.

First, TL rejects the District Court's finding that this theory represented a "new" theory of damages. TL argues that "[b]ecause Terex sold to CPEX Accounts in South Florida, they displaced sales that otherwise would have gone to TL, as the natural, authorized source of Terex parts in South Florida." Appellant's Br. 11. As such, TL

contends that its damages theory that it lost sales it could have made to CPEX Accounts is "no different" from its original damages theory that it lost sales made by CPEX Accounts to TL's potential customers. *Id.* But TL does not address the substance of the District Court's ruling that this theory was fundamentally different from the one it had explicitly alleged and upon which it premised its discovery requests. TL's Complaint assumes that it was harmed by Terex's failure to disclose the existence of parts-only "dealers" who "surrounded" TL in south Florida, i.e., CPEX Accounts. JA59. The Complaint makes no mention of competing with Terex. TL's subpoenas to CPEX Accounts, moreover, sought only documents related to "sales of Terex Parts by [CPEX Accounts] to customers in Southern Florida as opposed to customers elsewhere." E.g., JA388; 395. Finally, TL's opening expert report explicitly relied upon TL's original, narrower theory. *See* JA522 (stating that analysis in report "constitutes calculation . . . of lost profits sustained by TL of Florida as a result of sales of Terex parts *by other Terex dealers* in South Florida." (emphasis added)).[5] TL's allegation that it was unfairly forced to compete with Terex in supplying parts to CPEX Accounts—which it did not articulate

---

[5] We note that the subpoenas we refer to and the expert report were filed in an appendix that contained documents that had been filed under seal in the District Court. Notwithstanding Local Appellate Rule 106.1(c)(2), the parties filed an untimely motion to permit sealing in this Court that set forth no basis for sealing the documents. Upon request by the Court for the basis for sealing, the parties cited the District Court's sealing order and their agreement to keep all the documents in that appendix confidential. This is insufficient under our rule and runs afoul of our case law. See *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-88 (3d Cir. 1994) (requiring that party requesting sealing show "[g]ood cause" as to how disclosure "will work a clearly defined and serious injury"). Because we are mystified as to how there could be "good cause" for keeping the items we reference from public view, we refer to them herein as public information. Further, we will deny Appellant TL's pending motion seeking to file the appendix under seal.

7

until its second expert report—is an entirely separate concern. It was not error to conclude that this theory of harm was materially different.

Second, TL argues that even if this theory of damages did amount to a new theory, the District Court still erred by finding that such a theory was untimely and by denying leave to amend.[6] Although the District Court did not do so explicitly, we analyze this claim under the rubric of Federal Rule of Civil Procedure 15, and review the District Court's denial of leave to amend for abuse of discretion. *See Rolo v. City Inv. Co. Liquidating Tr.*, 155 F.3d 644, 654 (3d Cir. 1998).

Under Rule 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the District Court may deny leave on account of undue delay, bad faith, prejudice to the opposing party, or futility. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993).

Here, the District Court did not abuse its discretion in denying leave to amend. TL's new theory was not presented until three months before the scheduled trial and after discovery had closed. TL now blames Terex for "conceal[ing]" the existence of CPEX Accounts, Appellant Br. 16, but it forgets that it was aware before the close of discovery that CPEX Accounts sold only to end users outside of TL's territory. Yet, despite this knowledge, TL limited its discovery to (and predicated its expert report on) its first, flawed damages theory, all the while insisting that the case proceed to trial. The delay

---

[6] TL requested leave to amend at oral argument on Terex's motion for summary judgment.

thus appears to be wholly of TL's doing. The District Court also found that allowing this amendment now at this late stage would require Terex to engage in significant, additional discovery related to the nature and identity of CPEX Accounts, the volume of parts sold to CPEX Accounts, and realistic capture rates associated with sales to CPEX Accounts. TL concedes this new discovery might be relevant to the issue. It was not improper to deny leave to amend so close to trial given these facts. *See Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (citing *Serrano Medina v. United States*, 709 F.2d 104 (1st Cir. 1983) and *DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir. 1979) for the proposition that "eleventh-hour amendment" or amendment introducing "new concepts and theories that would require extensive additional discovery and create [a] risk that [a] trial scheduled for three months hence will have to be delayed" constitutes prejudice sufficient to deny leave to amend).[7]

### III.

For the foregoing reasons, we will affirm.

---

[7] We therefore decline TL's request to reach the merits of its second damages theory.